Nov. Term,
1860.
————————
Mark
v.
The State.

Mark and Another *v.* The State, on the relation of Bowless.

The act of *March* 5, 1859, entitled "an act, supplemental to an act, entitled 'an act to exempt property from sale in certain cases,'" did not take effect till the laws of that year had been published and circulated in the several counties of the State ; the section of the law declaring that it ·should be in force sooner, being unconstitutional, for not disclosing an emergency.

Under the provisions of the exemption-law of 1852 (2 R. S., p. 336), the execution defendant was not required to make out a schedule of his property, but only to point out to the officer the property he claimed ; and a claim to hold *all* his property as exempt from sale was good under that law, without a designation of each article claimed.

Every resident householder of the *State,* without regard to the particular locality of his residence, is entitled to the benefit of the exemption-law ; as well when in transit with his family and property from one residence to another, as when permanently settled.

*Friday,*
*November* 30.

APPEAL from the *Grant* Common Pleas. ·

Perkins, J.—The State, on the relation of *Bowless,* sued *Jacob Mark,* a constable of *Grant* country, and his sureties, on *Mark's* official bond. Trial, and judgment for the relator.

The breach of the bond complained of, is the selling, by *Mark,* upon execution, of property of *Bowless* which was, and was claimed as being, exempt from sale upon execution. The complaint does not allege that *Bowless* designated to the constable, or gave him a list of, the several articles of property he claimed ; but avers that he told him, that he had not $300 worth in all, and "demanded a set-off." In effect, he claimed his entire property as exempt from sale. The transaction occurred after the act of 1859, entitled "an act supplemental to an act entitled, 'an act to exempt property from sale in certain cases,' approved *February* 17, 1852," was passed, but before it was distributed in all the counties of the State. Acts of 1859, p. 150.

The evidence in the case, touching the designation of property, and manner of making the demand for exemption, did not go beyond the allegations of the complaint.

The question here is, whether a sufficient claim of exemption was made. If the act of 1859, *supra,* was in force at the

time, it is clear that the claim was insufficiently made. That act requires that it should be made, by furnishing to the officer an inventory of the property of the claimant, verified by oath. But that act was not in force. It is true, that it is a part of the act that it shall be in force from and after its passage and publication, meaning, of course, publication in a designated newspaper. But the act contains no declaration of emergency; and the Constitution, art. 4, § 28, declares that "no act shall take effect until the same shall have been published and circulated in the several counties of this State, by authority, except in case of emergency; which emergency shall be declared in the preamble, or in the body of the law." This constitutional provision not having been conformed to, the section of the law declaring it to be in force is inoperative.

But was the demand sufficient under the act of 1852? That act provides that "If any execution-debtor shall claim property as exempted by virtue of this act, he shall elect whether he will claim personal, or real property, or both, and shall designate the property so claimed." 2 R. S., § 9, p. 338.

This enactment does not require a verified list of property, and we think no list at all, to be furnished to the officer, for such is not its literal meaning; and another section of the same act, viz: § 6, imposes the duty of making the schedule of the designated property, upon the person or persons selected as appraisers. The execution-defendant seems only called upon, under this act, to point out to the officer the property he claims; whereupon it is the duty of the officer to take steps for its appraisement, and if the value exceeds $300, then, probably, the defendant would have the further right, if he saw fit to exercise it, of selecting, in case of personal property, which articles should be taken out to reduce the value to $300. According to the liberal, perhaps too liberal, rule heretofore acted upon by this Court, on this point, we think the designation of all one's property, as claimed to be exempt from sale, was sufficient under the act of 1852. See Ind. Pr. p. 393, *et seq.*

The statute now (Acts of 1859, *supra,*) prescribes the mode of making claims hereafter. This case, as to such pro-

Nov. Term,
1860.

MARK
v.
THE STATE.

ceedings, has no importance as a precedent, and we shall not elaborate it.

Another question arises in the case, viz: whether the relator is a person embraced by the provision of the statute; whether he is one entitled to claim the benefit of the provision? As the complaint, in a suit like this, must aver that the relator, or person for whose benefit the suit is prosecuted, is a resident householder, the question whether he is such arises under the general denial.

The evidence shows that the relator was, at the time of the levy and sale in question, a resident of the State, and the head of a family, but was in the act, or course, of moving that family from a house in *Grant*, to a house in *Wayne* county, *Indiana*; and the question is, was he at that time, within the intention of the statute, a "resident householder"? Such being the class of persons entitled to the benefit of the statute.

It is to be regretted that our legislature did not, like that of *New York*, expressly extend the benefit of the statute to heads of families, while moving from one residence to another; as they certainly merit and need it as much while journeying to, as while resting in, their houses. Indeed, it is necessary that they should possess it while on the journey, to enable them to enjoy it at the end of it.

The statute is for the benefit, the comfort, of the family. It is intended to protect it from utter destitution; it is a humane provision, required by the Constitution, and should be liberally construed in furtherance of its object.

There was a time when this question was left by the *New York* statute, as it is now by ours, to construction; and the highest Court of that State held, that the head of a family, while in transit from one residence to another, was still a householder within the spirit and intent of the act. See the cases collected in Voorhies' Code, 3 Ed. Supp. p. 183, *et seq.*

But of what must the debtor be a resident; of a county, or simply of the State? The statute does not specify; but we think clearly of the State. Any person who is a resident of the State, is entitled to the benefit of the provisions in question, without regard to particular locality in the State. The sovereign has said, without regard to locality, that certain residents,

shall have certain privileges.   This means, residents within the jurisdiction of the sovereign; so that the debtor is protected in his transit from house to house through different counties, as well as in a single county.   The question of fraudulent removal can not arise in this case.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

*R. T. St. John, A. Steele* and *H. D. Thompson,* for appellants.

*I. Vandevanter, J. F. McDowell* and *J. Brownlee,* for appellee.

(1) " Whenever it shall appear from the affidavit of the plaintiff, or some other person, that such plaintiff has a legal demand then due, against any person then in, or about to come into any county, and that such defendant, as the affiant believes, is about to leave the State, or the county, taking with him property subject to execution, or other means with which such demand might be paid in whole, or in part, with intent to delay or defraud his creditors, any justice shall issue a *capias ad respondendum* against such defendant, which shall be returnable forthwith, and may be served anywhere in the county where issued.   2 R. S. 1842, § 24, p. 454.