MEADE COUNTY BANK OF STURGIS v. REEVES, Auditor.

1 Laws 1899 Chap. 136, § 1, approved February 8, 1899, authorizes the payment of a state bounty for wolf scalps. Section 9 appropriates $5,000

from the state treasury "for the year 1899 and each fiscal year thereafter," for the payment of such bounties. Section 13 declares an emergency to exist, and that the act shall take effect from its approval. Laws 1891, Chap. 70, establishes a fiscal year as commencing July 1, and ending on June 30, succeeding. Comp. Laws, § 4757, in force prior to 1891, defines "year" as a calendar year. *Held*, that the $5,000 was appropriated for the fiscal year ending June 30, 1899, and that mandamus would issue to compel the state auditor to draw warrants on the state treasurer in payment of a county treasurer's wolf-bounty certificate filed with the auditor prior to July 1, 1899.

2. Laws 1899, Chap. 136, § 1, authorizes payment of a state bounty on wolf scalps, and Section 9 appropriates $5,000 therefor for the fiscal year ending June 30, 1899. Wolf-bounty certificates to the amount of $13,000 were filed with the state auditor before that date. *Held*, that such certificates should be paid in full in the order in which they were filed, until the appropriation was exhausted, and were not subject to payment pro rata, and that plaintiff, having filed its certificate before the appropriation was exhausted, was entitled to mandamus against the auditor to compel the drawing of warrants on the state treasurer in payment of such certificate.

(Opinion filed April 21, 1900.)

Appeal from circuit court, Meade county. Hon. J. B. MOORE, Judge.

Mandamus by the Meade County Bank of Sturgis against James D. Reeves, as auditor of South Dakota, to compel the drawing and delivery of certain warrants. From a judgment in favor of plaintiff, defendant appeals. Affirmed.

*John L. Pyle*, Attorney General, and *Alva E. Taylor*, Assistant Attorney General, for appellant.

*Chas. O. Polk*, and *Horner & Stewart*, for respondent.

CORSON, J. This is a proceeding by mandamus, instituted by the Meade County Bank, the holder of a number of wolf-

bounty certificates issued by the county treasurer of Meade county, to require the defendant, as state auditor, to draw his warrants upon the state treasurer therefor. Judgment was rendered in favor of the plaintiff, and the defendant appeals.

The legislature, at its session in 1899, enacted a law to encourage the destruction of coyotes, wolves and mountain lions, and to provide a bounty for killing the same, which constitutes Chapter 136 of the Session Laws of that year. In the first section of that act it is provided as follows: "There shall be paid, as hereinafter provided, for the killing within the boundaries of this state, of the animals hereinafter mentioned, the following bounties, to-wit: for each coyote so killed, $1.00 for each wolf so killed, $3.00, and for each mountain lion so killed, $3.00." The following sections prescribe the method of applying for the bounty, and the ninth section provides as follows: "For the purpose of carrying out the provisions of this act there is hereby appropriated out of the general fund the sum of five thousand ($5,000) dollars for the year 1899 and each fiscal year thereafter, or so much thereof as may be necessary and not otherwise appropriated." By Section 13 it is declared that an emergency exists and that the act shall take effect from and after its passage and approval. The act was approved February 8, 1899. It appears from the record in this case that the plaintiff bank, being the owner of certificates amounting to about $1,400, issued by the county treasurer of Meade county, filed the same with the state auditor prior to the 1st day of July, 1899, and demanded the auditor's warrants on the state treasurer therefor, which said auditor declined to draw. It appears from the return of the state auditor that prior to July 1, 1899, county treasurer's certificates for the wolf bounty amounting

to about $13,000 had been filed with him.   The auditor, in said return, expressed his willingness to issue to the persons entitled thereto warrants in accordance with the provisions of Chapter 136, above referred to, but it is quite apparent from his return that he was in doubt as to the construction to be given to Section 9 of said act.   The learned circuit court before which the action was tried took the view that the expression "for the year 1899," used in said section, was intended to mean the calendar year of 1899, and held that it was the duty of the auditor to issue his warrants upon the bounty fund for the calendar year 1899 to persons presenting county treasurers' certificates, in the order in which they were presented, until the full sum of $5,000 should be exhausted; and that, as that appropriation had not been exhausted and paid out when the p'aintiffs filed the certificates in controversy, the peremptory writ of mandamus should issue.   The principal questions involved in this case are:   What construction shall be given to the language making the appropriation in Section 9 of the act, and in what manner shall the certificates be paid?   Shall they be paid pro rata out of the appropriation, or shall they be paid in the order in which they are filed with the state auditor?

It will be noticed that by the provisions of the section there is appropriated out of the general fund the sum of $5,000 "for the year 1899 and each fiscal year thereafter."   It will also be noticed, as before stated, that the act took effect on February 8, 1899.   If the construction of the learned circuit court is correct, that "the year 1899" was intended to mean the calendar year, then there would necessarily be an interval from January 1, 1900, to July 1, 1900, for which there would be no appropriation.   By Chapter 70, Session Laws 1891, a fiscal

year was established for this state "in all matter of accounts, receipts, expenditures, estimates and appropriations, commencing on the 1st day of July and ending on the 30th day of June in each year." The legislature, in enacting Section 9, was evidently familiar with the act of 1891, as it will be noticed that it uses the term "each fiscal year thereafter." It is conceded by counsel that as the act took effect February 8, 1899, as above stated, persons killing any of the animals mentioned in Section 1 of the act between the 8th of February and the 1st of July, 1899, are entitled to the bounty provided for in the act. It is also apparent, from the fact that the act was passed with an emergency clause, that it was the intention of the legislature that the destruction of the animals mentioned should commence at once. Taking all the provisions of the statute into consideration, we are of the opinion that the legislature clearly intended by the use of the expression "the year 1899" the fiscal year ending June 30, 1899, and intended that the first appropriation of $5,000 should be applied to the payment of bounties prior to July 1, 1899, when a new appropriation would be available. It is true that by Section 4757, Comp. Laws, in force prior to 1891, the word "year" is defined to mean a calendar year, and, ordinarily, when the term "year" is used in the statute, the calendar year would be intended; yet, when the legislature is making appropriations for any year or part of a year, we must presume that it intends the "fiscal year," as defined by the law of 1891. This construction of the section gives effect to all the provisions of the act. Any other construction presents insuperable difficulties. As before stated, by construing the term "year" as a calendar year, there is an interval of time for which no appropriation is made; and by construing

it as intending to refer to the fiscal year commencing July 1, 1899. then no appropriation would seem to be made for the payment of the bounty on animals killed between February 8 and July 1, 1899, which, as we have seen, amounted to about $13,-000. It is clearly apparent, therefore, that the legislature contemplated that immediately upon the passage of the act there would be great activity in the destruction of these animals, and that an appropriation of $5,000 for the four months and twenty two days between February 8th and July 1st would be required. One of the cardinal rules for the construction of statutes requires the court to ascertain, if possible, from the language used, the intention of the lawmaking power. "The intent is the vital point—the essence of the law." Suth. St. Const. 234. And for the purpose of ascertaining that intention the court may take into consideration all the provisions of the act. "When the intention can be collected from the statutes, words may be modified, altered, or supplied so as to obviate any repugnancy or inconsistency with such intent." Suth. St. Const. 218; Needham v, Railway Co., 38 Vt. 300; Silver v. Ladd, 7 Wall. 219, 19 L. Ed. 138; Lawrence Co. v. Meade Co., 6 S. D. 528, 62 N. W. 131; Jones v. Trust Co., 7 S. D. 122, 63 N. W. 553; In this case, however, there is no necessity for supplying any words not contained in the act. Giving to the expression "the year 1899" its clearly-intended meaning, the various provisions of the act can be carried into effect in the manner clearly intended by the lawmaking power.

Assuming, then, that it was the intention of the legislature to appropriate $5,000 for the payment of the bounties for the time intervening between February 8th and July 1st, the next question presented is, in what manner should the holders of county

treasurers' certificates be paid? We are of the opinion that, under the previous decisions of this court, such certificates should be paid in the order in which they are filed with the state auditor, until the appropriation for the specified year is exhausted. Collins v. State, 3 S. D. 18, 51 N. W. 776; State v. Mayhew, 10 S. D. 365, 73 N. W. 200. Those owning certificates, therefore, filed after the appropriation is exhausted for the designated fiscal year, would necessarily be compelled to await the payment of their certificates until a new appropriation is made by the legislature. As it affirmatively appears from the record in this case that the respondent's certificates were filed before July 1, 1899, and before the first $5,000 appropriation was exhausted, it was entitled to the issuance of the peremptory writ. The decision of the lower court, therefore, though based upon an erroneous construction of Section 9 of the act, was correct, and should be affirmed   The judgment of the circuit court is affirmed.