### STATE *ex rel.* LAVIN *et al.* v. BACON *et al.*

1. Const. Art. 1, § 22, as amended, authorizing the passage of legislative enactments with an emergency clause, should be read as a part of and further exception to Const. Art. 1, § 1, as amended, reserving to the people the right to require that legislative enactments, except such as may be necessary for the immediate preservation of the public peace, health, or safety, shall be submitted to a vote of the people; and hence an act passed with such emergency clause is not unconstitutional, and will take effect on its passage and approval.

2. Const. Art. 14, § 2, provides that certain state institutions shall be under the control of a state board of charities and corrections, under

such regulations as the legislature may provide. *Held*, that the power to regulate the terms of office of the members of such board is in the legislature, and Act March 2, 1901, providing that members appointed to fill vacancies shall not hold for the unexpired portion of the term, but only until the next session of the legislature, is valid.

3. An enrolled bill filed in the office of the secretary of state is conclusive on the courts that all provisions of the constitution requiring certain acts to be done in the passage of bills have been complied with.

(Opinion filed April 3, 1901.

Original action by the state of South Dakota, on relation of J. D. Lavin and W. E. Tipton, against F. H. Bacon and H. P. Smith. Judgment for plaintiff and relators.

The facts are stated in the opinion.

*John L. Pyle,* attorney general, and *Alva E. Taylor,* assisstant attorney general, for the state.

It is clear from the provisions of the constitution and statute of the state that so far as the length of the term of an office is concerned, either for a full term or to fill a vacancy, the matter is left wholly in the discretion of the legislature, and it is clear that the legislative power is supreme and omnipotent so far as fixing the term of the offices, providing how long a vacancy appointee shall hold, the compensation of the commissioners, and generally everything connected with their offices and the persons who shall fill them. Chap. 65, Session L. 1901; Const. sec. 2, art. 14; *Ex parte* Lusk, 82 Ala. 519; Robinson v. White, 26 Ark.; People v. Brainard, 27 Cal. 470; Bulger v. Merrill, 45 Cal. 553; City Council v. Sweeney, 44 Ga. 463; Crook v. People, 106 Ill. 237; Coffin v. State, 7 Ind. 157; Bryan v. Cattell, 15 Iowa 538; Prince v. Skillen, 71 Maine, 361; Taft v. Adams, 3 Gray 126; Opinion of Justices, 117 Mass. 603; Wilcox v. Rodman, 46 Mo. 322; People v. Van Gaskin, 5 Mont. 352; State v. Howe, 25 Ohio St. 588.

396      STATE ex rel. LAVIN et al. v. BACON et al.

Argument of Counsel.                    [14 S. D.

It will be noticed that the *act* above referred to was passed with an emergency clause which also stated that the act was necessary for the immediate preservation and support of the existing public institutions of this state, and the act provided it should be in force and take effect immediately upon its passage and approval, and hence it became a law as soon as it was approved by the governor, which was a few days before the adjournment of the legislative session.

It seems to me, therefore, that the only question that could possibly arise as to whether or not, under the initiative and referendum provision of the constitution, the legislature has power to put a law of this kind into immediate force and effect.

Section 22 of article 3 of the constitution provides: "No act shall take effect until ninety days after the adjournment of the session at which it was passed, unless in case of emergency (to be expressed in the preamble or body of the act), the legislature shall by a vote of two-thirds of all the members elected of each house otherwise direct."

The court does not have authority to review the finding or determination of the legislature as to when an emergency exists. Cooley Const. L., 53; Gillinwater v. Miss. & Ct. R. R. Co., 13 Ill. 1; Carpenter v. Montgomery, 7 Blackf. 415; Hendrickson v. Same, 7 Ind. 13; Mark v. State, 15 Ind. 98; Day Co. v. State, 68 Texas 526.

*N. J. Cramer, Kirby & Winsor,* and *Horner & Stewart,* for respondents.

The question for consideration here, to state it broadly is, Can any measure proposed by a member of the legislature, which has passed both houses and been signed by the governor, become a law until the period of time has elapsed in which the people of the state

have reserved to themselves the right to initiate the proceedings to have it submitted to them, except such laws as are passed for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions?' Sec. 1, art. 3 Const.; chap. 93, S. L. 1899.

It is claimed that the legislature, having declared there is an emergency in the act, that the emergency cannot be questioned, and that the legislature having declared that this act is for the immediate preservation and support of public institutions, that the decision of the legislature cannot be questioned, that both questions stand upon the same footing. This is not correct. The emergency clause in the constitution is in substance as follows: No act shall take effect until ninety days after the adjournment of the legislature, unless in case of emergency (to be expressed in the preamble or body of the act). Sec. 22, art 3, Const.

What may be deemed an emergency for this purpose is purely a legislative question, and it is for the legislature to determine what circumstances, conditions or facts make an emergency. But it certainly will not be contended that the legislature can, by a clause inserted in an act, declare that the passage of the same was necessary for the immediate preservation and support of existing public institutions, change the purpose of the act from what is expressed therein, nor change existing law, whether it be constitutional or statutory. Cooley Const. Law, 55-56.

The constitution requires the fact of signing to be entered upon the journal. Sec. 19, art. 3, Const. This is an imperative requirement and must be complied with. Cooley on Const. Law, 163-164; State v. Burlington, 84 N. W. 255.

The questions arising under the law which has been passed are somewhat difficult on our part to discuss, for the reason that some

of the questions seem to be original questions, almost, coming for the first time before this court. We shall not claim that any office is property in the sense that cattle or land are the property of the owner, but under the statute that was in force, the defendants were entitled to the possession and emoluments of the office until 1905, unless forfeited by their misconduct in office, voluntary abandonment, or unless taken away by law, and that the right was as perfect a right as the title of any individual to his property, real or personal. Nichols v. McLain, 101 N. Y. 533; Hoke v. Henderson, 4 Del. 1; State Prison v. Day, 32 S. E. 748; State v. Gattis, 34 S. E. 429; State v. Jordan, 33 S. E. 139.

CORSON, J. This is an original action in this court, in the nature of quo warranto, to determine the title of the defendants to the office of members of the state board of charities and corrections. The defendants filed an answer to the petition, but, as counsel have agreed upon the facts, it will not be necessary to refer specially to the petition and answer. The facts as contained in the stipulation may be briefly summarized as follows: That during the legislative session of 1893 the governor appointed William J. Sibbison and L. B. Laughlin as members of the board of charities and corrections, for the term of six years, commencing on the 6th day of March, 1893, to succeed other members whose terms expired on that day; that the appointment so made was confirmed by the senate; that in January, 1899, the governor appointed B. H. Lien and F. M. Brown as members of the said board for the term of six years, to succeed said Sibbison and Laughlin, and transmitted said appointments to the senate for confirmation, but that said appointments were not confirmed or acted upon during the session of the legislature, or at any other time; that thereafter, on the 4th day of March, 1899, and after the adjournment of said legislature, the governor appointed said Lien and

Brown as members of said board, to succeed said Sibbison and Laughlin, without the consent and confirmation of the senate; that said Lien and Brown entered upon the discharge of their duties as such members of the board, and continued to perform the same until the 15th day of December, 1900, when they resigned as such members, and on the 27th day of December, 1900, the governor appointed the defendants herein, F. H. Bacon and H. P. Smith, to fill the vacancies in said board caused by the resignation of said Lien and Brown, and it is under this appointment that the defendants claim the right to hold the office for the unexpired terms caused by the expiration of the terms of Sibbison and Laughlin and the resignation of Lien and Brown. The relators, J. D. Lavin and W. E. Tipton, claim the right to the office by virtue of appointments made by the present governor under and by virture of an act of the legislature of this state entitled "An Act to Amend Section 3, Chapter 5, of the Session Laws of 1890, Entitled, 'An Act to Provide for the Appointment·of a Board of Charities and Corrections and to Define Their Duties and Powers.' " approved March 2, 1901. This act reads as follows:

"Be it enacted by the Legislature of the State of South Dakota:

"SECTION 1. That Section 3 of Chapter 5, of the Session Laws of 1890, entitled, 'An Act to Provide for the Appointment of a Board of Charities and Corrections and to Define Their Duties and Powers,' be and the same is hereby amended to read as follows: Section 3, Term of Office. All appointments for full terms shall be made by the governor and confirmed by the senate for six years, and appointees so appointed and confirmed shall hold their offices until their successors are appointed, confirmed and qualified, and when an appointment has heretofore been made to fill a vacancy, or shall hereafter be made to fill a vacancy, such appointee shall hold only until the close of the regular legislative session· immediately following his appointment,

at which time the term of office of such appointee shall expire and he shall cease to hold such office.

SEC. 2.　All acts and parts of acts in conflict with the provisions of this act are hereby repealed.

SEC. 3.　Whereas, there is no law limiting the term of office of appointees appointed during the recess of the legislature and to fill vacancies, the enactment of the foregoing provision is necessary for the immediate preservation and support of the existing public institutions of this state, and an emergency is hereby declared to exist and this act shall take effect and be in force immediately upon its passage and approval."

The defendants contend: First, that the said act of the legislature is not in force, and will not be in force until 90 days after the adjournment of the legislature, by reason of the amendment of Section 1 of Article 3 of the state constitution, submitted to the people by the legislature of 1897, and and adopted by them at the general election in 1898; second, that the members of the board of charities and corrections are constitutional officers, and that the terms of those holding office at the time the said law was passed and approved by the governor were not, and could not be affected by that act; third, that in the passage of the law the provisions of the constitution were not complied with, and hence the law is void. On the part of the relators it is contended that, as the act referred to was passed with an emergency clause, it took effect and became in force immediately upon its passage and approval by the governor under the provisions of Section 22 of Article 3 of the state constitution, and hence does not come within the provisions of Section 1, Article 3, as amended; second, that neither the full term of a member of said board, nor the term of one appointed to fill a vacancy, is fixed by the constitution, and hence that the terms of such officers are within the control

of the legislature, and it was competent for the legislature to provide for the termination of the terms of the defendants Bacon and Smith, as has been done by the law in question ; and, third, that it is not affirmatively shown by the journals that the requirements of the constitution were not complied with.

Section 1 of Article 3 of the state constitution, as it was originally adopted, was as follows: "The legislative power shall be vested in a legislature which shall consist of a senate and house of representatives." Section 22 of the same article reads as follows: "No act shall take effect until ninety days after the adjournment of the session at which it passed, unless in case of emergency (to be expressed in the preamble or body of the act) the legislature shall, by a vote of two-thirds of all the members elected to each house, otherwise direct." Section 1 of that article as amended in 1898 reads as follows: "The legislative power of the state shall be vested in a legislature which shall consist of a senate and house of representatives, except that the people expressly reserve to themselves the right to propose measures, which measures the legislature shall enact and submit to a vote of the electors of the state, and also the right to require that any laws which the legislature may have enacted shall be submitted to a vote of the electors of the state before going into effect, except such laws as may be necessary for the immediate preservation of the public peace, health or safety, support of the state government and its existing public institutions; provided, that not more than 5 per centum of the qualified electors of the state shall be required to invoke either the initiative or the referendum. This section shall not be construed so as to deprive the legislature, or any member thereof of the right to propose any measure. The veto power of the executive shall not be exercised as to measures referred to a vote of the people. This section shall apply to municipalities. The enacting clause of all laws approved by vote of the electors of the

state shall be, 'Be it enacted by the people of South Dakota.' The legislature shall make suitable provisions for the carrying into effect of the provisions of this section." No change has been made in Section 22, and it remains as originally adopted. It will be noticed that Section 1, as amended, provides that the people "expressly reserve to themselves the right   *   *   *   to require that any law   *   *   * shall be submitted to a vote of the electors of the state before going into effect," excepting, etc. The right to require any law that has taken effect or is in force to be submitted is not reserved. It is to be observed further that by Section 22, in case of an emergency, in which case the emergency shall be expressed in the preamble or body of the act, the act shall take effect as directed by a vote of two-thirds of all the members elected to each house.

It seems to be the well-established rule in considering any provision of a constitution that the whole is to be examined with the view of arriving at the true intention of each part, and that effect is to be given, if possible, to the whole instrument, and to every section and clause. If different provisions seem to conflict, the courts must harmonize them, if practicable, and must lean in favor of that construction which will render every word operative, rather than one which makes some words idle and nugatory. Cooley, Const. Lim. 70, 71. Adopting the rule suggested by Mr. Cooley, the section as amended and Section 22 of the same article must be construed together. As thus construed and read together, Section 22 must be regarded as furnishing an additional exception to Section 1 as amended. This court held in State v. Finnerud, 7 S. D. 237,64 N. W. 121, that in construing constitutional provisions it was proper to read the provisions of one section in connection with the provisions of another section, as constituting an exception thereto, and in the opinion this court says: "Undoubtedly, as contended by counsel for the state,

the several provisions of the constitution should be construed together. So construed, we are of the opinion that Section 3, Article 14, should be read as requiring all regents appointed for a full term to be confirmed by the senate, but not those appointed by the governor to fill vacancies, and that the clause requiring the state educational institutions to be under the control of nine regents, appointed by the governor and confirmed by the senate should be read 'with the exception of vacancies filled by the appointment of the governor.' In other words, Section 3, Article 14, should be read with Section 8, Article 4, added thereto as an exception. It would not be reasonable to give Section 3 a literal construction, as the board cannot at all times be composed of regents confirmed by the senate. There will be more or less vacancies filled by the governor during the recess of the legislature." Thus construed, Section 1, as amended, would read, in addition to the exceptions therein stated, "and except also such laws as are passed with an emergency clause as provided by section 22." That such was the intention of the legislature in submitting the amendment, and of the people in adopting it, is manifest from the fact that no amendment was made to Section 22, and that the amendment applies only to laws not yet in force. This view is further strengthened by the fact that the legislature of 1899, in which were several members who constituted a part of the legislature of 1897, which proposed the amendment, and who came direct from the people who had adopted the same, as well as the legislature of 1901, have continued to act under the provisions of Section 22, and very nearly, if not quite, half of the laws passed at those two sessions were passed with the emergency clause, in which it was declared the laws should be in force and effect from and after their passage and approval. Both the former and present governor have approved the acts so passed, and the other executive officers of the state have assumed in their official ac-

tions that these laws were in force from and after their passage and approval. Large amounts of money have been audited by the state auditor and paid out by the state treasurer upon the theory that the laws so passed with an emergency clause went into effect when approved by the governor. This court, in Bank v. Reeves, 13 S. D. 193, 82 N. W. 751, in passing upon the wolf bounty act, held that the act took effect from and after its approval by the governor, and issued its mandate requiring the auditor to disburse several thousand dollars appropriated therefor prior to the time that the law would ordinarily take effect. It is true, in that case the question was not raised by either party; but the fact that it was not either raised by the parties or suggested by the court tends to show how generally the understanding prevailed that the provisions of Section 22 remained in full force and effect. Undoubtedly, too, many very important transactions throughout the state have been made upon the theory that the laws containing the emergency clause went into effect immediately. To hold that only laws which come within the exception specified in Article 1 as amended are in force until the expiration of 90 days after the adjournment of the legislature would have the effect of annulling many business transactions, subjecting many parties to liability to actions for moneys paid out in good faith, and would otherwise affect and disturb to an unknown extent the business and transactions of public officers and private persons within the state. A court would only be justified in so holding in a case where the constitutional provisions were so clear and mandatory that no other conclusion could be reached.

In the view we take of these constitutional provisions, there are three classes of laws under this amendment, namely, laws that do not take effect until the expiration of 90 days after the adjournment of the legislature, and are not clearly within one of the exceptions;

laws coming within the exceptions specified in Section 1, which may or may not take effect within 90 days, depending upon whether or not they are passed with the emergency clause; and laws passed under the provisions of Section 22, Article 3, which contain an emergency clause. It is only to the first class that the provisions of Section 1 are applicable. Where, therefore, laws are passed without an emergency clause, and do not come within the class excepted from the provisions of that section, they may be suspended until the people can vote upon the same upon the filing of a petition as provided in Chapter 93, Laws 1899. But no such petition can suspend the operation of the laws in the other two classes of laws.

It will be observed that the law of 1901 which we are considering not only declares that an emergency exists, but also that the "provision is necessary for the immediate preservation and support of the existing public institutions of this state." It seems to have been uniformly held under constitutions containing an emergency clause, and providing that laws containing such a clause shall take effect as therein directed, that the action of the legislature in inserting such a clause is conclusive upon the courts. Mark v. State, 15 Ind. 98; Day Land & Cattle Co. v. State, 68 Tex. 526, 4 S. W. 865; Hendrickson v. Hendrickson, 7 Ind. 13; Carpenter v. Montgomery, 7 Blackf. 415. No reason occurs to us why the same rule should not apply to the act in question. The legislature having declared that the provisions of that act are necessary for the immediate preservation and support of the existing public institutions of the state, that declaration is conclusive upon this court, and brings this class clearly within the exception contained in Section 1 (as amended) of Article 3 of the constitution. In either view of the law, therefore, it is clearly

not within the referendum clause of that section. The law, therefore, must be held to be a valid law, and to have been in full force and effect at the time the relators were appointed as members of said board.

This brings us to the second question: Was it competent for the legislature to enact a law which in effect terminated the terms of office of the defendants? It is contended on the part of the defendants that they are constitutional officers, and, having been appointed by the governor to fill vacancies, under the decisions of this court they are entitled to hold their offices until the end of the term. But we cannot agree with the defendants in this view. Section 2 of Article 14 of the constitution provides that the state institutions mentioned in the first section shall be under the control of a state board of charities and corrections, under such rules and regulations as the legislature shall provide; such board to consist of not to exceed five members, to be appointed by the governor and confirmed by the senate, and whose compensation shall be fixed by law. It will be noticed that by this section the only limitations upon the legislative power are that the board shall consist of not to exceed five members, and shall be appointed by the governor and confirmed by the senate. The term of office, both as to those appointed for a full term and those appointed to fill vacancies, is left entirely to the legislature. It is competent, therefore, for the legislature to fix the length of the full term, and the term for which a party appointed to fill a vacancy shall serve. By Chapter 5, Laws 1890, the legislature fixed the term of the members of the board of charities and corrections at six years, but made no provision for the terms of members appointed to fill vacancies. No further legislation was had upon this subject until the law was enacted which we are now considering. Under the law as it formerly existed this court held that members of the board

appointed to fill vacancies held under the provisions of the constitution for the unexpired term. State v. Finnerud, *supra;* State v. Sheldon, 8 S. D. 525, 67 N. W. 613; State v. Bacon, 14 S. D.—, 85 N. W. 225. At the time these decisions were made, the legislature had taken no action upon the subject of vacancies in the office of members of said board, and the court was compelled to apply the provisions of Section 8 of Article 4 of the constitution, which provided for the filing of vacancies when no provision had been made by the constitution or law for filling the same. And in the decisions in those cases it was distinctly stated that the subject was one entirely under the control of the legislature, whenever it should deem it proper to pass a law upon the subject. The law we are now considering provides that "when an appointment has heretofore been made to fill a vacancy, or shall hereafter be made to fill a vacancy, such appointee shall hold only until the close of the regular legislative session immediately following his appointment, at which time the term of office of such appointee shall expire and he shall cease to hold such office." While the office of the member of the board of charities and corrections may be regarded, in a certain sense, as a constitutional office—being one of the offices provided for by the constitution—still it is not a constitutional office in the sense that the term of the officer is fixed by the constitution. The term of the officer is fixed by the legislature, and, being fixed by the legislature, that body may change the term in such manner as it may deem proper. Being vested with the power to legislate upon the subject, its action cannot be controlled by the courts; and a party in accepting the office of member of the board must be deemed to have accepted it subject to the power of the legislature to change his term of office, whether appointed for a full term, or to fill a vacancy. This question was very fully con-

sidered by the supreme court of the United States in the case of Butler v. Pennsylvania, 10 How, 402, 13 L. Ed. 472. It was contended in that case that the law abolishing an office was in violation of the constitution of the United States, because the appointment of an officer was in the nature of a contract; but that learned court held that a party had no legal claim to an office, and in the opinion the court says: "It follows, then, upon principle, that in every perfect or competent government there must exist a general power to enact and repeal laws, and to create and change or discontinue the agents designated for the execution of those laws. Such a power is indispensable for the preservation of the body politic and for the safety of the individuals of the community." In the later case of Newton v. Commissioners, 100 U. S. 548, 25 L. Ed. 710, in again considering the same question, the court used the following language: "The legislative power of a state, except so far as restrained by its own constitution, is at all times absolute with respect to all offices within its reach. It may at pleasure create or abolish them, or modify their duties. It may also shorten or lengthen the term of service. And it may increase or diminish the salary or change the mode of compensation * * * They involve public interests, and legislative acts concerning them are necessarily public laws. Every succeeding legislature possesses the same jurisdiction and power with respect to them as its predecessors. The latter have the same power of repeal and modification which the former had of enactment—neither more nor less. All occupy in this respect a footing of perfect equality. This must necessarily be so, in the nature of things. It is vital to the public welfare that each one should be able at, all times to do whatever the varying circumstances and present exigencies touching the subject involved may require. A different result would be fraught with evil." Our attention has not

been called to any provision in the constitution of our own state which prohibits the legislature from shortening or extending the term of officers whose terms of office are fixed by the legislature. We are clearly of the opinion, therefore, that the law we are now considering was within the scope of the legislative power, and that its effect was to terminate and limit the terms of office of the defendants to the adjournment of the legislature of the present year.

It is further contended on the part of the defendants that in the passage of the law in question certain provisions of the constitution are not shown to have been complied with by the journals of the two houses, and hence the law is for that reason void. It is claimed that it does not appear upon the journal of the house that the bill was in fact read a third time, and that it does not appear upon the journal of the senate that the president of the senate signed the enrolled bill in the presence of the senate. The fact that the journals do not affirmatively show that the provisions of the constitution were fully complied with would not, we think, under the decisions, be held to overcome the presumption which attaches to the enrolled bill that all the forms required by law had been complied with, even in jurisdictions where the question is open to investigation. But, without definitely passing upon this question, it may be sufficient to say that this court in the record case of Narregang v. Brown Co. (decided at present term) 14 S. D.— , 85 N. W. 602, after a full consideration of the authorities, held, on grounds of public policy, and what seemed to it to be the greater weight of authority, that the enrolled bill filed in the office of the secretary of state is conclusive upon the courts that all the provisions of the constitution requiring certain acts to be done in the passage of bills have been complied with. Under that decision, therefore, the question of whether or not the various requirements of the constitution have been complied with will not be considered by this court.

These views lead to the conclusion that the defendants are holding the office of members of the board of charities and corrections without authority of law, and should be removed therefrom, and that the relators are legally entitled to act as members of said board; and the judgment of this court will be entered accordingly.