## THOMAS *et al.* v. STATE.

1. Const. art. 14, § 2, limiting the number of members of the state board of charities and corrections to five, is not violated by Laws 1903, p. 94, c. 86, creating a new board, of three members, to take the place of the old board, of five, with a proviso that nothing in the act shall operate to legislate out of office any member of the old board.

2. Const. art. 12, § 3, providing that the compensation of a public officer shall not be increased or diminished during his term of office, is not violated by Laws 1903, p. 94, c. 86, creating a new state board of charities and corrections, to take the place of the old, and, among other things, providing that the compensation of members shall be a salary of $1,500 per annum, instead of a per diem of $3, under the old law.

3. Where the governor might, by vetoing an act of the legislature on the ground that it interfered with his prerogative of appointment, prevent its passage, he, in effect, ratifies the appointments as made by the legislature therein by approving the act.

4. A contention that the legislature, having once fixed the compensation of members of the state board of charities and corrections, had no power thereafter to change such compensation is not tenable.

FULLER, J., dissenting.

(Opinion filed Jan. 20, 1904.)

Original action by D. C. Thomas and others against the state of South Dakota. Judgment for plaintiffs.

*C. H. Dillon* and *Bartlett Tripp*, for plaintiffs.

*Philo Hall*, Atty. Gen., for the state.

CORSON, P. J.   The plaintiffs bring this original action to recover of the state the salary alleged to be due them as members of the state board of charities and corrections from March 1, 1903, to July 1, 1903, amounting to about $2,000. The case is presented to this court upon an agreed statement of facts, but which, in the view we take, it will not be necessary to set

out in full.   It is sufficient to say  that  the  state takes the po-
sition that the law of 1903, p. 94, c. 86, under which  the plain-
tiffs claim, fixing the salaries of  the members of  the  board of
charities and  corrections at ·$1,500 per annum,  is  unconstitu-
tional, for two reasons: (1) That  it  provides  for seven mem-
bers of the board, whereas the  constitution  limits the number
to five; (2) for the reason that it  provides  for  an  increase of
compensation of the members of the board, in violation of sec-
tion 3,  article 12, of  the  state  constitution,  which  provides,
"Nor shall the compensation of  any  public officer be increased.
· or diminished during his term of office."

Sections 1 and 2 of  article 14 of  the  constitution, relating
to the ·charitable and penal institutions, read as follows:

"Section 1.  The charitable and penal  institutions  of  the
state of  South Dakota shall  consist of  a  penitentiary, insane
hospital, a school for the deaf and  dumb,  a  school  for  the
blind, and a reform  school.

"Sec. 2.  The  state  institutions  provided  for  in  the  pre-
.ceding section shall be under the control of  the  state board of
charities and corrections, under such rules and  restrictions as
the legislature shall·provide; such board to  consist of  not to
exceed five members, to be appointed by the governor and con-
firmed· by the senate and whose compensation shall be fixed by
law."

It will be observed that the constitution provides for  plac-
ing these institutions under the  control of  a  state  board  of
. charities and corrections, under such  rules  and  regulations as
the legislature  shall  provide, and  that  the  only  limitations
therein contained are that the board shall· be constituted of not
to exceed five members, and that they  shall  be  appointed  by

the governor and confirmed by the senate, and that the terms
of office, duties, and compensation are left to the legislature,
without any limitation. State ex rel. v. Bacon, 14 S. D. 394,
85 N. W. 605. To carry into effect these provisions of the con-
stitution, the legislature, at its first session, in 1890, by chap-
ter 5, p. 5, of the Session Laws of that year, provided for the
appointment of such a board, limited the number to five, fixed
the term of office of its members, defined their duties, and
fixed their compensation at $3 per day and their actual ex-
penses while engaged in the performance of the duties of their
office. Subsequently, by section 1 of chapter 65, p. 82, of the
Laws of 1901, the third section of the act of 1890 was amended
by fixing the term of the appointee to fill a vacancy as extend-
ing to the close of the next session of the legislature. The
legislature in 1903 passed an act entitled "An act to provide for
the government of the charitable and penal institutions of the
state of South Dakota," which was approved February 26,
1903, constituting chapter 86, p. 94, of the Session Laws of
that session, in which a substantially new law was provided
relating to the board of charities and corrections, and under
this new law the compensation of the commissioners was
changed from a per diem of $3 to a salary of $1,500 per annum.
Section 1 of the law reads as follows: "The charitable and
penal institutions of the state of South Dakota * * * shall
be under the control of the state board of charities and cor-
rections, consisting of three members. Said board shall be
appointed by the Governor and confirmed by the Senate. The
first appointments shall be, one for the term of two years, one
for the term of four years, and one for the term of six years,
and thereafter the regular terms of such office shall be for six

years, and the members appointed for regular terms shall hold office until their successors shall be appointed and qualified. Any vacancies in the membership of such board shall be filled by the Governor, and the appointees to fill vacancies shall hold until the next session of the Legislature, succeeding their appointment, shall meet, at which time their term of office as vacancy appointees shall cease. Provided, however, that nothing in this act shall operate to legislate out of office any commissioner of said board who had heretofore been appointed and confirmed as such commissioner."

It is contended by the plaintiffs that this act created new terms of office—full terms of six years, terms to fill vacancies, and ad interim terms—and the salaries were fixed by the Legislature, and were not an increase of compensation during the term of office. It is further contended that the act of 1903 goes over the entire ground covered by the act of 1890, and changes and modifies it in many material respects, and, while it does not in express terms repeal such act, it does so clearly by implication; and under the decision of. the territorial court in the case of Campbell v. Case, 1 Dak. 17, 46 N. W. 504, the legislature, having gone over the ground covered by the former statute, repealed such statute by implication, except as to those provisions expressly retained.

They further contend that no part of the old law has been retained in the act of 1903, except such portion of it as can be read into the proviso at the close of the first section. It is quite clear from an examination of the latter act that it practically goes over the whole ground of the former act, and provides substantially a new law relating to this board. The act reduces the number of commissioners from five to three; it im-

poses upon the new commissioners additional duties, such as giving bonds; making more frequent visits to the institutions under their control; and requires, in addition to other duties, that of providing for each institution; the supervision of the erection of new buildings, involving the expenditure of large appropriations; it changes the term of office by providing that the first members appointed under the act shall hold their office for terms of two, four, and six years; and it requires each member of the board to visit each penal and charitable institution at least once in each month, instead of once in each year, as provided by the law of 1890. By the act of 1903 the old board would have been effectually removed, and a new board of three would necessarily have been required, had not the proviso to the first section continued the old members in office. It will be observed by the proviso that nothing in the act shall operate to legislate out of office any commissioners of said board who have heretofore been appointed and confirmed as such commissioners. It is quite clear, therefore, that the Legislature has, as it had the power to do, provided for a new board of charities and corrections, and has repealed all acts or parts of acts in conflict with that act. The effect of this proviso seems to be to retain the commissioners then in office under the new law. They could not continue in office under the old law, for that had been repealed. They must necessarily, therefore, be commissioners under the new law, which then took effect by reason of the emergency clause. This section in the new law declares the inadequacy of the old law, and provides for the taking effect immediately of the new one. The proviso which declares the commissioners shall not be legislated out of office must be construed to mean that they are to constitute

the commissioners under the new law, and, when that law was passed by the Senate, and approved by the Governor, their appointment was, in legal effect, made by the Governor, and confirmed by the Senate.    The proceeding was somewhat irregular, it is true, but the fact that it was irregular does not necessarily make it invalid.    Although the act did provide for the appointment of three commissioners by the Governor, it is clear that under the proviso he could not make the appointment, as by such an appointment the board would have consisted of seven members, and consequently would have been, as claimed by the Attorney General, unconstitutional.    In Fox v. McDonald, 101 Ala. 51, 13 South 416, 21 L. R. A. 529, 46 Am. St. 'Rep. 98, the Supreme Court of Alabama, in speaking of an appointment irregularly made, says: "Though the action of the commissioners in the present instance was put in the form of a ratification, its necessary legal effect was that of reappointment.    It was a clear act of the commissioners, manifesting that thenceforth McDonald should be chief of police, and this was certified by the corporate authorities.    Nothing more was necessary to constitute an appointment."    The proviso to section 1 of the act of 1903 has as effectually provided the members of the board as it would have done by naming expressly the length of terms ad interim, and naming the incumbents in the act, or permitting the Governor to do so.   New terms for which they had been appointed by the Governor were, in effect, provided for the present incumbents—new terms for two, four, and six years for the next appointments by the Governor, and the fixed tenure of office thereafter of six years for each appointee.    They are the making of new terms, not the continuation of the old—the fixing of new com-

pensations for new terms, not an increase of the compensation of
the old. It was all new legislation. The proviso did not re-
tain any of the original act, but retained the incumbents of the
office, only. There could be no old terms, for there was noth-
ing left of the old act to which they could attach that would
sustain them or give them life. They could not draw the com-
pensation provided for by the old law, for that law was in
effect repealed, and a new compensation provided. While the
new law retained the present board in office, their terms in
office were, in effect, new terms, and not a continuation of the
old terms. The Legislature, having fixed a new compensation
for the new terms, did not thereby increase the compensation
of the officers during their terms of office, within the meaning
of the law, as these terms were ended with the repeal by im-
plication of the old law. Stone v. Pryor (Ky.), 45 S. W. 1053.

In the view we take of the law, it is not material to con-
sider the nature of the term fixed by the law of 1890, as it is
competent for the Legislature to at any time change the law
fixing the term, even though it might thereby legislate out
of office members of the board. State ex rel. v. Bacon, supra.

When, therefore, the Legislature of 1903 passed a new
law reducing the number of members of the board, and chang-
ing their term of office, it, as before stated, practically removed
the old board; and, had it not been for the proviso, all the
members of the old board would have ceased to be such, and
the Governor could have appointed and the Senate confirmed
three new members of the board, who would have at once
entered upon the duties of their office. The Legislature, how-
ever, instead of removing the members of the old board, pro-
vided that they should be retained under the new law; and the

proviso is; in effect, the same as an independent section naming the then members of the board as members constituting the new board, for the terms to which they had previously been-appointed. We are of the opinion that it would have been competent for the Legislature to so provide members of the new board, if acquiesced in by the Governor in approving the act. Undoubtedly the Governor could have insisted upon his constitutional right to appoint the new members of the board, had he desired to have done so, and declined to approve the bill naming the members of the board until that part of the act had been stricken out. So with reference to the proviso under consideration. The Governor could have refused to approve the act with that proviso in effect appointing the old board as members of the new board, had he chosen to have done so; and the passage of the act over his veto would not have legalized the proviso, and the Governor would have still retained the right to appoint the members of the new board, but as the Governor approved the act, he, in effect, ratified the appointment as made. The contention of the Attorney General that the Legislature, having once fixed the compensation of the board, had thereafter no power to change such compensation, is not tenable. The matter of compensation was left entirely to the Legislature. It is competent, therefore, for the Legislature to change the same at any time, and fix a different compensation, whenever the interest of the state would be subserved thereby, subject, of course, to the constitutional provision that the compensation of no public officer shall be increased or diminished during his term of office. The law upon this subject as laid down in Bennett v. State, 16 S. D. 417, 93 N. W. 643, arose upon a provision of the Constitution fixing

the compensation of the circuit judges, and providing therein that the Legislature might increase the salary to a sum therein specified.

While the questions presented are not entirely free from doubt, it is the duty of this court to give effect to an act of the Legislature, unless it is fully satisfied that the act is in violation of some provision of the Constitution, and resolve any doubts on the subject in favor of the legislative action. The intention of the Legislature in the passage of the act of 1903 to increase the duties and compensation of the members of the board, and to retain in office the members of the board recently appointed by the Governor, and the members constituting a part of the old board, is clear. The Legislature evidently saw the difficulty of legislating out of office all the members and leaving the new appointments to the Governor, as, under the act, he could have appointed but three. It removed the difficulty, therefore, by taking the view that it could retain the old members as constituting the new board, ad interim, until their terms expired by limitation under their appointment. This proceeding, as before stated, was irregular; but the Constitution seems, in effect, to have been complied with by the Governor and Senate having ratified the act so passed by the Legislature with the proviso therein contained. This view is strengthened by the fact that on February 3, 1903, the Governor had appointed and the Senate confirmed three of the members of the board retained in office by the proviso, whose terms of office were about to expire, and who would not have been members of the new board, had it not been for that appointment and confirmation.

We are of the opinion, therefore, that the plaintiffs are

entitled to judgment for the several amounts claimed by them, and judgment is so ordered.

FULLER, J., dissenting.