## No. 9581.

### IN RE INTERROGATORIES OF THE GOVERNOR.

STATUTES—*Emergency Clause—Safety Clause.*   Acts of the General Assembly which are referable under amended sec. 1 of art. V of the Constitution (Laws 1910, c. 3) take effect at the expiration of ninety days from the adjournment of the session, and not before, even though bearing Emergency Clause (Constitution art. V, sec. 19).

Acts not referrable, and not bearing the Emergency Clause, take effect at the expiration of ninety days from their passage.

Acts bearing both the Safety and Emergency Clause take effect immediately upon their approval by the Governor.

Hon. VICTOR E. KEYES, Attorney General; Mr. H. E. CURRAN, Assistant Attorney General.

Mr. CHARLES HAYDEN, Mr. PAUL LEE, Amici Curiae.

Mr. Justice Bailey delivered the opinion of the court.

CERTAIN interrogatories have been propounded to this court by the Governor, as follows:

1.   Does an act of the General Assembly which contains the emergency clause, but does not contain the so-called safety clause, go into effect immediately upon the passage and approval thereof?

2.   In the absence of the so-called safety clause, is an act of the General Assembly subject to the referendum, notwithstanding it contains the emergency declaration that the same shall take effect from and after its passage and approval?

3.   When does an act of the General Assembly passed with the emergency clause, but without the so-called safety clause, take effect and become operative?

The emergency clause alluded to above is found in section 19, Article V of the Constitution, as follows:

"No act of the General Assembly shall take effect until ninety days after its passage (except in cases of emergency which shall be expressed in the act) unless the General Assembly shall, by a vote of two-thirds of all the members elected to each house, otherwise direct."

The so-called safety clause in section 1, Article V, as amended by the adoption of the Initiative and Referendum, as follows:

"The legislative power of the state shall be vested in the General Assembly, consisting of a Senate and House of Representatives, both to be elected by the people, but the people reserve to themselves the power to propose laws and amendments to the constitution and to enact or reject laws and amendments to the constitution and to enact or reject the same at the polls independent of the General Assembly, and also reserve power at their own option to approve or reject at the polls any item, section or part of any act of the General Assembly.    *    *    *

"The second power hereby reserved is the Referendum, and it may be ordered, except as to laws necessary for the immediate preservation of the public peace, health or safety, and appropriations for the support and maintenance of the department of state and state institutions, against any act, section or part of any act of the General Assembly, either by a petition signed by five per cent of the legal voters or by the General Assembly. Referendum petitions shall be addressed to and filed with the Secretary of State not more than ninety days after the final adjournment of the session of the General Assembly that passed the bill on which the referendum is demanded. The filing of a referendum petition against any item, section or part of any act shall not delay the remainder of the act from becoming operative. The veto power of the Governor shall not extend to the measures initiated by, or referred to, the people. All elections on measures referred to the people of the state

shall be held at the biennial regular general election, and all such measures shall become law or a part of the constitution when approved by a majority of the votes cast thereon by proclamation of the Governor, but not later than thirty days after the vote has been canvassed.  This section shall not be construed to deprive the General Assembly of the right to enact any measure."

Before the emergency clause can be incorporated with an act of the Legislature, a two-thirds vote of both houses is required, and a separate vote is required to be taken upon the incorporation of the clause.

The questions of law raised by the interrogatories are of first impression with us.  In *People ex rel. Ramer*, 61 Colo. 422, 158 Pac. 146, an effort was made to have this court determine the effect of the passage of an act having the emergency clause without the safety clause attached, but since that question did not then appear to be properly before the court in that case, it expressly declined to determine it.

The precise questions involved here, however, determined in *Sears v. Multnomah County*, 49 Oregon 42, 88 Pac. 522, where the initiative and referendum amendment is, as noted in *Van Kleeck v. Ramer*, 62 Colo. 4, 156 Pac. 1108, practically identical with our own.  There it was sought to establish the rule that an act passed with the emergency clause, but without the safety clause, could not be submitted to the voters under the referendum amendment, upon the theory that the two provisions were in this respect identical in effect.  In discussing this question the court said:

"That an act may take effect under a general emergency clause, and yet be subject to the referendum, is clearly contrary to the intent of the amendment, and would produce disastrous results.  The clause in the amendment which reads:  'Any measure referred to the people shall take effect and become the law when it is approved by a majority of the votes cast thereon, and not otherwise,' clearly means that a law upon which the referendum is invoked can not

take effect prior to its approval by the vote; and consequently no act that is subject to the referendum can be made to go into operation for ninety days after the adjournment of the session or its approval by vote."

In concluding that the emergency clause alone is ineffectual as a safety clause, that court said:

"Therefore we conclude that if the act comes within the amendment of section 1 of Article IV of the Constitution, and the Legislature desires to have it take effect upon its approval, it must so declare, and set forth in the preamble or body of the act, and as the emergency clause contained in this act does not pretend to bring it within the exception of the amendment of section 1 of Article IV, it can not operate to give it immediate effect, and therefore it becomes effective ninety days from the approval thereof by the Governor, and the demurrer should have been sustained."

So also in *State ex rel. Tax Commission v. Moore*, 103 Ark. 48, 145 S. W. 199, where the court used the following language:

"Under this initiative and referendum amendment only 'laws necessary for the immediate preservation of the public health or safety' are exempted from its provisions, and no power is reserved by the people to pass directly upon such laws. All other laws are subject to its operation; and, ninety days being given by its terms from the final adjournment of the session of the Legislature which passed them in which to demand or order the referendum thereon, they can not take effect or go into operation till the expiration thereof, nor thereafter until approved by the people, if the referendum is ordered or invoked."

In South Dakota, where the provisions of its constitution are very similar to ours, a contrary view to the one applied by the Oregon court was originally expressed. *State ex rel. Levin v. Bacon*, 14 S. D. 394, 85 N. W. 605. However, that state in a more recent decision modified its views as announced in the *Bacon* case, *supra*, and practically aligned itself with the holdings of the Oregon and Arkansas courts.

This latter opinion is reported in *State ex rel. Richards v. Whisman,* 36 S. D. 260, 154 N. W. 707, L. R. A. 1917 B, 1. In effect the court receded from its holdings in *State v. Bacon, supra,* as is plainly indicated by this extract from the later opinion:

"Sections 1 and 22 of article 2 should be construed and read together as if forming different parts of but one section. *State v. Bacon,* 14 S. D. 394, 85 N. W. 605. The emergency measures mentioned in section 22 must and can only refer to the same emergency measures mentioned in the referendum clause exception contained in section 1. It therefore follows that the Legislature, by necessary implication, is only authorized to declare emergencies in that class of measures specified in the said exception to the referendum clause. As to all emergency measures and acts within the purview of this exception, the Legislature may declare an emergency to exist, for the purpose and to the end that such enactment may at once go into effect, and such declaration and finding as to the existence of such emergency is final and not within the power or province of the courts to question. But as to any measure, law, enactment, clearly not within the class of emergency measures specified within said exception, the Legislature has no power or authority to declare an emergency to exist in relation thereto, by any vote, however large the same may be; and the action of the Legislature in embodying emergency clauses in measures clearly not comprehended within the said exceptions are wholly unwarranted and void, and should be so held by the courts. Not that the act itself would be void, but the emergency clause would be void, with the result that, in the event of a proper referendum petition being filed as required by law, such enactment would not go into effect until approved by a majority vote of the electors of the state."

So it may be safely stated that there is no case to be found at variance with those above cited, except *State ex rel. Langer v. Crawford,* 36 N. D. 385, 62 N. W. 710, Ann.

Cas. 1917 E, 955. The conclusion there was by a divided court, three to two, in which every judge filed an opinion expressing his individual views. The prevailing opinions do not appeal to us as correctly interpreting the law, or as either logical or persuasive.

The emergency and so-called safety clauses here involved have separate and distinct functions. They are not interchangeable. After the adoption of the referendum amendments the emergency clause as to all referable laws, as a means of making such acts immediately effective, became inoperative. Nor does the safety clause alone make an act effective at once. It is only when both safety and emergency clause are incorporated in, or attached to, an act, that it is immediately in force.

The following language of the referendum constitutional amendment: "All elections on measures referred to the people of the state shall be held at the biennial regular election, and all such measures shall become the law or a part of the constitution, when approved by a majority of the voters thereon, and not otherwise," is stated in such clear and definite language, so plainly expressing the purpose and intent of the act that construction is not possible. It simply states that no act which is subject to the referendum shall take effect until approved by a majority of the votes thereon, and that ends the matter. This provision can not by any course of logical reasoning be held to mean that such an act can be put into effect through the emergency clause prior to the expiration of the time within which it may be referred. No other conclusion is possible, without doing violence to the meaning of the language which gives expression to the clear purpose and object of the people in adopting this amendment.

The conclusion is irresistible that no act, not of the excepted class, can have the force of law, or can become operative until after ninety days from the adjournment of the assembly at which passed, and if referred, then not until approved by a majority of the people by vote at a general election.

It is argued that the emergency clause of the constitution above recited was not repealed by the initiative and referendum amendment. This requires no argument. It was not so repealed. It is as effective now as it was before the amendment in so far as the Legislature has power to finally enact statutes. When the General Assembly had the absolute power to enact all legislation, the emergency provision was applicable to all acts of the body. But when the power to finally enact legislation was withdrawn from the General Assembly except as to certain classes, then manifestly the emergency provision could apply only to acts within the power of the Legislature to finally enact. Plainly the Legislature can not act in an emergency where it has no power to act at all. It can only apply the emergency clause of the constitution to an act to which it has the power to give finality.

We therefore reach these conclusions:

1.   That all referable acts of the General Assembly which contain the emergency clause, but not the so-called safety clause, if not referred, take effect ninety days after the adjournment of the session of the General Assembly at which passed, and not before.

2.   In the absence of the so-called safety clause, all acts of the General Assembly, although they carry the emergency clause, declaring that they shall take effect from and after their passage, are still subject to reference.

3.   All acts of the General Assembly not referable because the safety clause is attached, or because they show upon their face that they are excepted from the referendum provision, not carrying the emergency clause, go into effect ninety days after their passage and approval by the Governor.

4.   All acts having both the emergency and safety clause go into effect immediately upon their passage and approval by the Governor.

Decision *en banc.*