ATTORNEY GENERAL, *ex rel.* BARBOUR, *v.* LINDSAY.

1. Constitutional Law — Statutes — Preservation of Public Health, Peace, etc.—Time of Taking Effect—Judicial Review.

The provisions of the State Constitution providing that acts of the legislature shall not take effect until 90 days from the end of the session at which they are passed, except that the legislature may give immediate effect to acts immediately necessary for the preservation of the public peace, health, or safety by a two-thirds vote of the members elected to each house, constitutes a definite limitation which the legislature cannot disregard by giving immediate effect to acts not within the class mentioned, and its action in so ordering a statute to have immediate effect is reviewable by the courts. Constitution, art. 5, § 21.

Ostrander and Bird, JJ., dissenting.

2. Same—Construction of Statutes.

Every intendment should be taken in favor of the propriety of legislative action and in case of doubt the law will be held valid.

3. Municipal Corporations.

Under the provisions of the Constitution, Act No. 5, Pub. Acts 1913, known as the Verdier act, authorizing municipal corporations to amend their charters piecemeal, and giv-

ing the law immediate effect, is not invalid; it cannot with sufficient certainty be said that the act is not immediately necessary for the preservation of the public peace, health or safety, to justify the court in declaring the statute unconstitutional.

McALVAY, C. J., dissenting.

4. SAME—BONDED INDEBTEDNESS—LIMITATION.

An amendment of the charter of the city of Detroit authorizing municipal ownership of the street railways, and providing for the issuance of mortgage bonds in excess of the eight per cent. limit of indebtedness fixed by the general incorporation statute, as amended by Act No. 5, Pub. Acts 1913, is not in conflict with the general law (section 4), nor is said amended statute unconstitutional, and a bill to enjoin a special election for the amendment of the charter should be dismissed.

5. SAME.

In construing the statute, it is determined that a city may borrow not exceeding eight per cent. of its assessed valuation for general municipal purposes and may issue bonds for the purchase of public utilities not exceeding two per cent. additional. In no case may the total bonded debt exceed 10 per cent. of the assessed valuation.

BROOKE, J., dissenting.

Appeal from Wayne; Van Zile, Hosmer, Mandell, Codd, and Hally, JJ. Submitted October 17, 1913. (Docket No. 58.) Decided January 23, 1914.

Bill by Grant Fellows, attorney general, on the relation of George H. Barbour, Fred T. Moran, and Charles A. Ducharme, against Richard Lindsay and others, board of election commissioners of the city of Detroit, and Oscar B. Marx, mayor, for an injunction. From a decree dismissing complainants' bill, they appeal. Affirmed.

*A. C. Angell* and *H. E. Spalding,* for complainants.

*Richard I. Lawson* and *Allan H. Frazer,* for defendants.

MCALVAY, C. J. Upon relation of certain residents and taxpayers of the city of Detroit, the attorney general filed this information, to test the validity of what is known as the municipal ownership amendment to the charter of the city of Detroit, and also the constitutionality of the statute under which such charter amendment was submitted by reason of its having been given immediate effect. The statute referred to is called the "Verdier act," passed by the legislature and approved March 11, 1913 (Act No. 5, Pub. Acts 1913), as an amendment to Act No. 279, Pub. Acts of 1909, and was given immediate effect.

The defendants are the board of election commissioners and the mayor of the city of Detroit. The information was filed before any proceedings were taken for the submission of the proposed amendment to the electors, and prayed that respondents be enjoined from preparing ballots and taking any proceedings for such submission, and, in case the amendment was submitted and carried, that the mayor should be enjoined from appointing the board of street railway commissioners contemplated by the amendment and from doing anything else pursuant to the terms of the amendment or exercising the powers which it conferred. This information was filed March 31, 1913, before the proposed election, and after argument of the case a temporary injunction was denied and the information dismissed without prejudice. The amendment was accordingly submitted and carried by a large majority. The case was heard before five judges of the Wayne circuit court, who later filed opinions, all concurring in the dismissal of the information.

The amendment of the charter of the city of Detroit, the validity of which is questioned in these proceedings, is of considerable length, consisting of 22 sections, and for the purposes of this opinion does

not require to be quoted. Its purpose is sufficiently stated in its title, which reads as follows:

"A bill to amend the charter of the city of Detroit so as to provide for the municipal ownership, maintenance and operation of street railways beneath, upon and above the surface of the streets of the city of Detroit and within a distance of ten miles from any portion of its limits, and to issue bonds to defray the cost thereof, in accordance with Act No. 279 of the Public Acts of 1909, as amended."

The amendment to the act above referred to, relied upon by respondents as authorizing the amendment to the charter of the city of Detroit, is Act No. 5 of the Public Acts of 1913, which was ordered by the legislature to take immediate effect, and was approved March 11, 1913. The validity of this amending act is challenged by the relator as contravening the provisions of section 21 of article 5 of the Constitution of this State, adopted in 1909, which provides as follows:

"No act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same is passed, except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a two-thirds vote of the members elected to each house."

Other questions are presented and discussed, but this is the most important question in the case, as it goes to the validity of both the amendment to the charter and the statute which authorized it. The contention of respondents upon this question, as stated in their brief, is as follows:

"We maintain that the power to give an act immediate effect under said section of the Constitution is to be exercised by the legislature, and the legislature alone; that the legislature is the sole judge of whether or not a law is immediately necessary for the preservation of the public peace, health, or safety; and that

the courts have no power to interfere with such legislative discretion once it has been exercised, right or wrong."

In other words, that this question is exclusively one for the legislature to determine. This, in effect, was the view taken by the trial court in disposing of the case. We must enter upon the consideration of the construction of this provision of the Constitution with the fundamental rule of construction constantly in mind that this construction contended for by respondents or any other construction cannot be accepted unless it can be found to be fairly within the meaning of the language of the provision itself. Cooley's Constitutional Limitations (7th Ed.), pp. 89, 91.

The exact question in this State is one of first impression. The constitutional provision under consideration was embodied in the present Constitution by adding to it a section which is a combination of sections 20 and 25, art. 4, contained in the Constitution of 1850. Section 20 of that Constitution read:

" *   *   *   No public act shall take effect or be in force until the expiration of ninety days from the end of the session at which the same is passed, unless the legislature shall otherwise direct, by a two-thirds vote of the members elected to each house."

The change made in this portion of section 21, art. 5, of the Constitution of 1909, under consideration, strikes out the clause "unless the legislature shall otherwise direct by a two-thirds vote of the members elected to each house," and substituted the following:

"Except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a two-thirds vote of the members elected to each house."

While the question is a new one in this jurisdiction and of great importance, it does not appear that the respondents, either in their brief or oral arguments,

challenge the jurisdiction of this court to consider and decide it, nor do they in any way question the long line of authorities, both Federal and State, which have established in this country the principle that the Federal and State Constitutions, in their respective jurisdictions, are the fundamental law of the land, and that the courts within their several jurisdictions are empowered to finally determine, as a matter of law, the constitutionality of any legislative action. Under the former Constitution, any act passed by the legislature might be given immediate effect if it received a two-thirds vote of the members elected to each house. By the added provision in section 21, no acts may be given immediate effect by the legislature, except "acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety." The change made, therefore, in this respect was restrictive upon the powers formerly granted the legislature.

So far in the consideration of this case we do not find any disagreement between the parties who have presented the matter for the consideration of this court. While not disputing the proposition that this provision was in its nature restrictive upon the legislature, the contention of the respondents is that this clause reposed in the legislature alone the power to determine whether an act passed by it was within the restriction fixed by the Constitution; that its determination, in the exercise of its legislative discretion, as to what acts shall take immediate effect is final and not subject to judicial review.

Before citing and discussing any authorities it will be well to consider the reason for placing in the new Constitution this restriction upon the powers of the legislature.

This court will take judicial notice of the history and course of legislation in this State. Under the

178 MICH.—84.

Constitution of 1850 it was possible and was the practice at any time during a session of the legislature, and particularly in its last days, to pass and give immediate effect by a two-thirds vote any acts within its pleasure, thereby not giving sufficient notice to the public and those persons immediately interested and affected by the passage of such legislation which was necessarily enacted without proper discussion and consideration. That the intent of this constitutional provision was to prevent such action is clearly indicated by the wording of the restriction itself. The necessity for this restriction upon the former power of the legislature to give all laws immediate effect by a two-thirds vote is therefore obvious. This constitutional provision relates only to the passage of certain acts by the legislature and as to when they take effect. When passed, all legislative acts are beyond its power and control, and, except where the exercise of a delegated power is specifically made final, are all subject to construction by the courts, and it is for the courts to determine whether legislative discretion is final. Courts, both Federal and State, have been vested by the several Constitutions with this authority of which they cannot be divested by the legislature. In our opinion this proposition is supported by the overwhelming weight of the authorities. Judge COOLEY, after discussing certain specific cases where the action of a legislature or other body or person is necessarily final, has said:

"But setting aside now those cases to which we have referred, where from the nature of things, and perhaps from explicit terms of the Constitution, the judgment of the department or officer acting must be final, we shall find the general rule to be, that whenever action is taken which may become the subject of a suit or proceeding in court, any question of constitutional power or right that was involved in such action will be open for consideration in such suit or proceeding, and that as the courts must finally settle

the particular controversy, so also will they finally determine the question of constitutional law." Cooley's Constitutional Limitations (7th Ed.), p. 76.

We find in the instant case that this action taken by the legislature has become the subject of a legal controversy, wherein the question of individual rights and constitutional power is involved, which question must be finally determined by the courts. Cooley's Constitutional Limitations, *supra;* Same, pp. 77, 78. The power delegated to the legislature must be found in the terms of this new constitutional provision, construed in connection with the intent of the people in incorporating such a provision in this Constitution.

Courts have never refused to review acts of the legislature in the exercise of a discretion, unless it explicitly appears that the grant of such discretion was exclusive, and the right to determine, in such a case, the question as to whether the exercise of such discretion by the legislature has been a proper one is inherent in the court as the final arbiter of constitutional and statutory construction. This case is no other or different from any other case which involves constitutional construction, and it must be decided upon well-known principles of law and the application of the ordinary rules of such construction.

As already stated, this section, without dispute, was intended to be a restriction upon legislative action and confined the legislative power and discretion to give immediate effect only to the classes of legislation designated. The logical conclusion of the contention of respondents (admitted by them upon the argument) that the legislature may determine that any act passed by it may be given immediate effect, and that such determination is final, wipes out and makes of no effect the restriction intended by the people in adopting the new Constitution. · No ambiguity appears in the wording of this section, and none is claimed by respondents. No words are used from

which any implication arises that it was the intention to grant a specific delegation of power, the exercise of which would be final. In constitutional construction the rule always obtains that the intent of the people is the intent to be ascertained and upheld. It is for the courts to determine this intent, as expressed in the Constitution, and to construe acts of the legislature with reference to it. The construction urged by respondents is not in harmony with the obvious intent of the people to restrict the power of the legislature in the matter of giving immediate effect to its acts, and therefore cannot be accepted.

Respondents, in support of their contention that the act of the legislature, in determining legislation which may be given immediate effect under this constitutional provision, is final and not reviewable by the courts, cite and rely upon the following cases: *Kadderly* v. *City of Portland*, 44 Or. 118 (74 Pac. 710, 75 Pac. 222) ; *Bennett Trust Co.* v. *Sengstacken*, 58 Or. 333 (113 Pac. 863) ; *Biggs* v. *McBride*, 17 Or. 640 (21 Pac. 878, 5 L. R. A. 115) ; *State, ex rel. Lavin*, v. *Bacon*, 14 S. D. 394 (85 N. W. 605) ; *Oklahoma City* v. *Shields*, 22 Okl. 265 (100 Pac. 559, 574) ; *In re Menefee*, 22 Okl. 365 (97 Pac. 1014, 1018).

The constitutional provisions in the States of Oregon, Oklahoma, and South Dakota all have practically the same provision, which reads as follows:

"No act shall take effect until ninety days from the end of the session at which the same shall have been passed, except in case of emergency; which emergency shall be declared in the preamble or in the body of the law."

See Lord's Oregon Laws, vol. 1, pp. 89, 100; Gen. Stat. Okla. of 1908, p. 95; Ann. S. D. Stat. of 1901, p. 6.

The first clause of this provision just quoted is exactly similar to that in the Constitution of this State now under consideration. The wide difference

in the provisions appears in the excepting clause, which, in our Constitution, reads as follows:

"Except that the legislature may give immediate effect to acts making appropriations and acts immediately necessary for the preservation of the public peace, health or safety by a two-thirds vote of the members elected to each house."

In Oregon and the other States mentioned, in case of any "emergency" to be declared in the preamble or body of the act, the legislature by a majority vote determines the question of immediate effect. In Michigan only two classes of legislation may be given immediate effect by a two-thirds vote of all members elected, and no authority is given to declare an emergency.

These cases relied upon by respondents, with practical unanimity, base their decisions upon this specific provision that an emergency was to be determined by the legislature and declared in the act. The construction of their constitutions in this respect by the courts of these States may be a proper construction, bringing the provision within the exceptions to the general rule recognized by Judge COOLEY, as above quoted, and other authorities.

The declaration by our legislature (not required by our Constitution), in the body of the act under consideration, that it was "immediately necessary for the preservation of the public peace, health or safety" gives it no added weight, for the reason that, if it was in fact within the excepting clause, the constitutional requirement of a two-thirds vote is all that is necessary to give it immediate effect. A reasonable inference which might be drawn from such superfluous declaration is that there existed a doubt in the legislative mind as to whether in fact this act would come within the classification of this provision.

In further support of their contention, respondents assert the fact that under section 30 of this same

article the passage of a local act is prohibited in cases where a general act can be made applicable, and providing "whether a general act can be made applicable shall be a judicial question," is conclusive that in the provision under consideration the determination relative to giving acts immediate effect was left exclusively and finally to the legislature. This provision is a new one in our Constitution and was adopted from other constitutions where the question had already been determined. In those States the courts have uniformly held that whether a general act can be made applicable was a legislative and not a judicial question. This, under our Constitution, has been reserved as a judicial question, doubtless in view of such constructions in those States, and is a clear indication that the people did not intend to curtail the jurisdiction of the courts to determine finally questions arising under this Constitution. Having determined that by this provision of the Constitution the exercise of the power thereby delegated to the legislature was not final, it logically follows that, in any case where the action of the legislature under this provision becomes the subject of a legal controversy, it is reviewable by the courts. This we are satisfied is supported by the weight of the authorities. This court will therefore exercise its constitutional authority to review all questions necessarily involved in this legal controversy, which includes the question involving the action of the legislature in giving immediate effect to the act under consideration. Such review necessarily carries with it the right to finally determine the constitutionality of such action. The legislature under this constitutional provision is given power to give immediate effect to acts passed by it, but its exercise of discretion by virtue of that power, as we have determined, is not final. If the courts are to uphold the legislative determination, laws passed by it and given immediate effect under this constitu-

tional provision must in fact be appropriation acts or acts which manifestly concern the public peace, health, or safety. This conclusion, we are satisfied, is founded upon reason and is supported by the authorities.

In *Mugler* v. *Kansas,* 123 U. S. 623, 661 (8 Sup. Ct. 273, 297), the court said:

"The courts are not bound by mere forms, nor are they to be misled by mere pretenses. They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the legislature has transcended the limits of its authority. If, therefore, a statute purporting to have been adopted to promote the public health, the public morals, or the public safety, has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts to so adjudge, and thereby give effect to the Constitution."

This was the statement of that court in discussing and defining the limitations of the police power, and in stating the fundamental principles of law which governed the case then under consideration, and is an accepted exposition of the law applicable to such cases.

In *Re Jacobs,* 98 N. Y. 98, at page 110 (50 Am. Rep. 636), the court says:

"Generally it is for the legislature to determine what laws and regulations are needed to protect the public health and secure the public comfort and safety, and while its measures are calculated, intended, convenient, and appropriate to accomplish these ends, the exercise of its discretion is not subject to review by the courts. But they must have some relation to these ends. Under the mere guise of police regulations, personal rights and private property cannot be arbitrarily invaded, and the determination of the legislature is not final or conclusive. If it passes an act ostensibly for the public health, and thereby destroys or takes away the property of a citizen, or interferes with his personal liberty, then it is for the

courts to scrutinize the act and see whether it really relates to and is convenient and appropriate to promote the public health. It matters not that the legislature may in the title to the act, or in its body, declare that it is intended for the improvement of the public health. Such a declaration does not conclude the courts, and they must yet determine the fact declared and enforce the supreme law. * * * In *Town of Lake View* v. *Rose Hill Co.,* 70 Ill. 191 [22 Am. Rep. 71], the court, speaking of the police power, says:

"'As a general proposition, it may be stated that it is in the province of the lawmaking power to determine whether the exigencies exist calling into exercise this power. What are the subjects of its exercise is clearly a judicial question.'"

The direct result of the action of the legislature in the instant case is to permit an amendment of its charter to increase the bonded indebtedness of the city of Detroit 2 per cent. upon all of its taxable property, which these appellants insist is manifestly to their injury, and under this law cannot be legally accomplished. The classification provided under the last clause of the provision under which the act in question was given immediate effect reads:

"And acts immediately necessary for the preservation of the public peace, health or safety."

Every one of these objects here expressed are those which call for the exercise of the police power of the State for their preservation. Therefore every act which may be given immediate effect by the legislature under this constitutional provision must be a police act.

The act to which the Verdier act, under consideration, was an amendment, being Act No. 279 of the Public Acts of 1909, entitled "An act to provide for the incorporation of cities and for changing their boundaries," was construed by this court not to authorize the piecemeal amendment of charters of cities already incorporated. For the purpose of mak-

ing provision for the amendment of city charters without revision, the Verdier act was passed by the legislature of 1913 and is purely an amendment of the title and certain sections of the original act referred to, as appears from its entitling. The only material change made in the original law by this amendatory act was to provide a method by which an existing city charter might be amended piecemeal, which was made possible by an amendment to section 21 of article 8, of the Constitution, adopted November 5, 1912. There is nothing contained in the title or body of this amendatory act which indicates, or by implication can be made to indicate, that it is a police act immediately necessary for the preservation of the public peace, health, or safety. An examination of the legislative journals does not disclose any suggestion during its passage through both houses, where it was subjected to numerous amendments, that in either house it was argued that the act was of such character, nor at the time it was given immediate effect by a two-thirds vote. The record of this case does not show that any reason of any kind was advanced in favor of giving immediate effect to this act, which simply permits an amendment to an existing city charter.

The original act which provided for the incorporation of cities and revision of their charters, under the Constitution of 1909, was approved June 2, 1909, and was an act of great importance, but at the time of its passage it did not appeal to the legislature as being an act immediately necessary for the preservation of the public peace, health, or safety. It was not given immediate effect. Counsel for respondents in their brief make no such claim, and their argument, and the argument of those agreeing with them, is based upon the proposition—

"That the courts or no other body or tribunal but the legislature is concerned or has power to interfere with such legislative discretion once it has been exer-

cised, right or wrong, no matter how others may view it."

A suggestion was made by one of them upon the argument that the legislature may have considered it as immediately necessary for the preservation of the public health. In the brief for relator it is charged that no such argument was advanced upon the hearing in the court below, and this is not denied. Such suggestion in effect is an abandonment of the basic argument upon which they plant their case. The original act had been in force four years, and no action was taken during that time looking toward any attempt to revise the charter to relieve the suggested inadequacy of the water supply of that city. It would appear to the ordinary mind that during this period no immediate necessity suggested itself to those now claiming such necessity. As already stated, nothing appears from the record to show that this act was given immediate effect because immediately necessary for the preservation of the public health, and the suggestion relative to the public health is evidently an afterthought and might as well have been advanced in regard to the public peace or safety.

It further appears that, immediately upon the passage of the Verdier act, proceedings were taken under it to amend the charter of the city of Detroit. An examination of this amendment, which was formulated by the common council of the city, submitted to the electors and adopted by the people, shows that it relates solely to the municipal ownership of street railways by the city of Detroit, making provision for the increase of the bonded indebtedness of the city 2 per cent. upon all its taxable property. We find in this action, taken by the municipality at the earliest opportunity, after the passage of this act, no attempt made to provide for an increased water supply and no indication on the part of the officials or the people

that such a provision was an immediate necessity for the preservation of the public health. Our conclusion is that this amendatory act, providing only for the amendment of existing city charters piecemeal, is in no sense a police act "immediately necessary for the preservation of the public peace, health or safety." The determination of the legislature by giving it immediate effect is not conclusive upon the courts, and they must decide, as a matter of law, whether the act so declared is a police act, within this constitutional provision. This is clearly a judicial question. This act was not within the classification fixed by this constitutional provision, and the act of the legislature in so determining was invalid. These proceedings under it were therefore void and of no effect. As we cannot presume that any portion of this statute would have been enacted by the legislature without having been given immediate effect, it follows that the entire act must be held invalid. This conclusion makes it unnecessary to discuss any other questions presented.

The decree of the circuit court should be reversed and set aside, and a decree should be entered in this court in accordance with this opinion.

BROOKE, J. I agree with my Brother MCALVAY that the constitutional provision in question imposes a definite limitation upon legislative action, and that the legislature cannot, with impunity, disregard that limitation and give immediate effect to acts clearly not immediately necessary for the preservation of the public peace, health, and safety. I further agree with him in holding that where rights are affected by the improper or illegal action of the legislature in giving immediate effect to an act not within the class fixed by the Constitution, and the injured party has recourse to the courts, the question whether the legislature has acted within or without the bounds of its constitutional powers is one for judicial determina-

tion. In such a case the courts are bound to exercise their constitutional functions, primary among which is the duty to determine whether the legislative action questioned is or is not constitutional.

It is true that the Constitution does not in terms place this duty upon the courts (as to the provision under consideration), but it is equally true that there is the same lack of definite instruction regarding other provisions. An act may embrace but one subject which shall be expressed in its title. No one would claim that a question arising under this provision of the Constitution should not be determined judicially, and yet the basic law is silent upon the point. In acting under the section in question, the legislature is not above and beyond the law. It is as certainly bound by the limitations fixed as by any others contained in the instrument. When the question is presented to the courts, as in the instant case, it must be met and determined the same as any other constitutional question. Had those who framed and adopted our recent Constitution intended otherwise, they easily could and wisely should, in the light of a century of judicial interpretation of constitutional limitations, have made their intention clear and put all misgivings at rest by simply declaring that this should be a legislative, and not a judicial, question.

In reaching a determination, however, I am of opinion that every intendment should be taken in favor of the propriety of legislative action. In cases of doubt, the courts should never interfere to thwart the legislative will, but, where the action constitutes a clear violation of the limitation imposed, it should unhesitatingly be held to be invalid.

With this view of the duty of the courts in mind, how should the action of the legislature, with reference to the so-called Verdier act, be regarded? The act is general in its scope and affects or may affect the charters of all cities within the State. Under our

scheme of government, municipalities have control of agencies for the supply of water, the preservation of health, and for police protection. I do not think it can be said with certainty that the act in question was not immediately necessary for the preservation of the public peace, health, and safety, and the courts should interfere only where that conclusion is inevitable.

It is clear that in any event the act (if otherwise unobjectionable) would become a valid enactment after the expiration of 90 days from the date of adjournment. In the case at bar it is contended that the act itself is unconstitutional for certain enumerated reasons, and it is particularly urged that the action taken thereunder by the city of Detroit is, in part at least, invalid.

The portion of the act questioned is as follows:

"SEC. 4. Each city may in its charter provide: * * *

"(b) For borrowing money on the credit of the city in a sum not to exceed eight per centum of the assessed value of all real and personal property in the city: *Provided*, that in cities where the amount of money which may be borrowed is now limited by law, such limit shall continue until it shall be raised or lowered by a three-fifths vote of the electors voting on the question at a general or special election, and in such cities, bonds issued for public improvements in connection with which a special assessment district is made to pay therefor, and which are a charge upon such district, shall not be included unless the contrary is provided by the charter, and the resources of the sinking fund shall be deducted in determining the amount of such indebtedness. No single increase shall exceed two per centum of the assessed value of the real and personal property in the city. When a city is authorized to acquire or operate any public utility, it may for the purpose of acquiring the same borrow money on the credit of the city in a sum not to exceed two per centum of the assessed value of all the real and personal property of the city, and the

city may also, for the purpose of acquiring such public utility, issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law: *Provided,* that such mortgage bonds issued beyond the general limits of bonded indebtedness prescribed by law shall not impose any liability upon such city, but shall be secured only upon the property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure: And *provided further,* that the charter shall provide for the creation of a sinking fund by setting aside such percentage of the gross or net earnings of the public utility as may be deemed sufficient for the payment of the mortgage bonds at maturity. In case of fire, flood or other calamity the legislative body may borrow for the relief of the inhabitants of the city and for the preservation of municipal property, a sum not to exceed one-fourth of one per centum of the assessed value of all real and personal property in the city, due in not more than three years, even if such loan would cause the indebtedness of the city to exceed the limit fixed in the charter. No city shall have power to incur indebtedness or issue bonds of any kind except for emergency purposes as above stated, and bonds secured only by mortgage on the property and franchise of a public utility which shall exceed in the aggregate ten per centum of the assessed value of all the real and personal property in the city."

The pertinent provisions of the Constitution are: Section 20 of article 8:

"The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit the rate of taxation for municipal purposes and restrict their powers of borrowing money and contracting debts."

Section 21: "Under such general laws, the electors of each city and village shall have power and authority to frame, adopt and amend its charter, * * * and through its regularly constituted authority, to

pass all laws and ordinances relating to its municipal concerns, and subject to the Constitution and general laws of this State."

Section 23: "Subject to the provisions of this Constitution, any city or village may acquire, own, and operate, either within or without its corporate limits, public utilities for supplying water, light, heat, power and transportation to the municipality and the inhabitants thereof, and may also sell and deliver water, heat, power and light without its corporate limits to an amount not to exceed twenty-five per cent. of that furnished by it within the corporate limits; and may operate transportation lines without the municipality within such limits as may be prescribed by law: *Provided*, that the right to own or operate transportation facilities shall not extend to any city or village of less than 25,000 inhabitants."

Section 24: "When a city or village is authorized to acquire or operate any public utility, it may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law: *Provided*, that such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such city or village, but shall be secured only upon the property and revenues of such public utility, including a franchise, stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure."

Section 4*b* of the act provides:

*First.* A restriction upon cities limiting their debt-contracting power to 8 per cent. of the assessed value of all property. This legislative action is mandatory under section 20, art. 8, of the Constitution.

*Second.* A method of raising or lowering a bond limit already fixed. Of course this power must be exercised by the city within the limitation of the general restriction contained in the earlier part of the section.

*Third.* An inhibition which prevents an increase of the bond limit of any city greater than 2 per cent. upon any single occasion.

So far, I can discern nothing in this section which does not fall fairly within the field of legislative activity under the Constitution. All three of these provisions are clearly "restrictions" on the powers of cities to borrow money and contract debts. Then comes the following provision:

"When a city is authorized to acquire or operate any public utility, it may for the purpose of acquiring the same borrow the money on the credit of the city in a sum not to exceed two per cent. of the assessed value of all the real and personal property of the city, and the city may also, for the purpose of acquiring such public utility, issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law," etc.

If this provision was intended to confer upon cities the right to issue bonds to the extent of 2 per cent. of the assessed valuation in excess of the general bond limit, it is clearly invalid, if said bonds are to be considered as a debt of the city. There can be but one universal bond limit. Considered as a restriction upon the borrowing power within the limitation, how should this provision be regarded? I am clearly of the opinion that it is invalid. The legislature is required to fix a general limitation upon the debt creating right of cities, but it cannot parcel out the borrowing power among various municipal purposes. Within the general limitation, the municipality is clothed with power to determine for itself, according to the exigencies presented, how much it will expend upon each of its municipal activities. Does the invalidity of this provision affect the entire act? I think not. There still remains an entirely valid restriction upon the debt-creating power, both as to amount and as to the method of increase.

At the municipal election held on April 7, 1913, four several charter amendments were voted upon and carried by large majorities.

*First.*  Increasing the bond limit from 2 to 4 per cent. of the assessed value of all property in the city. (In this increase is to be included all bonds issued by the board of water commissioners.)

*Second.*  Increasing the water board bonded debt.

*Third.*  Affecting civil service.

*Fourth.*  Providing for the municipal ownership and operation of street railways.

With reference to the first two of these amendments, I am of opinion that their legality cannot be questioned. They constitute lawful municipal action under valid provisions of the so-called Verdier act. Whether the amendments Nos. 3 and 4 contravene any constitutional provisions is not determined. That question was distinctly reserved by the Wayne circuit court, and I am of opinion that it should rest in abeyance until, in proper proceeding, it is there determined.

It is contended on behalf of complainant that the bill in question was not printed as required by section 22, art. 5, of the Constitution. I have examined this question and am of opinion that the unanimous conclusion of the circuit judges upon this point is correct. Reference is had to the opinion of Judge Hally, which will be found printed at large in the record.

The decree dismissing the bill of complaint is affirmed.

MOORE, J.  I agree in the main with what is said by Justice BROOKE, but I do not agree with his conclusion as to the effect of the 2 per cent. proviso. I think it clear that the limitation of 8 per cent. is for general municipal purposes. If a city acquires a public utility, or acquires public utilities, it may, for that purpose, issue bonds not exceeding in amount 2 per cent. of the assessed valuation of the city. It may not issue bonds exceeding in amount 2 per cent. of the assessed valuation of the city to acquire any or all public

178 MICH.—35.

utilities. Its power in this direction is limited to an issue of bonds not exceeding 2 per cent. of the assessed valuation. The total bonded debt for which the city is liable can in no case exceed 10 per cent. of the assessed valuation of the city. This, in my judgment, is the meaning of the law, and, with this meaning, the law is valid. The legislature has power to restrict the limit of bonded indebtedness incurred in acquiring or in creating public utilities.

STEERE, and STONE, JJ., concurred with MOORE, J.

OSTRANDER, J. Whether an act of the legislature is one immediately necessary for the preservation of the public peace, health, or safety is a question to be finally determined by the legislature. Three-fifths of the members of each house having given the opinion that the act in question is one immediately necessary for the preservation of the public peace, health, or safety, no court may review or set aside such determination. This conclusion is based upon the language employed in the Constitution as well as upon the fact that whether an act is immediately necessary for the preservation of the public peace, health, or safety is a proposition involving, in each case in which it is presented, a question of public policy.

In the construction of the act, I agree with Mr. Justice MOORE upon the questions of the limitation of the bonded indebtedness of the city and the force and effect of the 2 per cent. clause. Such construction, such interpretation, gives effect to all provisions of the law, and no other reasonable meaning can be gathered from the entire act. That, when compared with the maximum restriction upon the power to create a bonded debt, the restriction upon the issue of bonds to acquire public utilities seems inadequate is a consideration which has not been overlooked. The legislature has not expressed its will with de-

sirable precision and certainty; but it is not the province of the court to amend the language or to supply omissions, if any have been made. The legislature may be relied upon to make certain an intention other than the one I find expressed in the act.

BIRD, J., concurred with OSTRANDER, J.