23 P.(2d) 355

**HUTCHENS v. JACKSON, County Treasurer.**

No. 3898.

Supreme Court of New Mexico.

June 10, 1933.

R. A. Prentice, of Tucumcari, and Chas. W. G. Ward, of East Las Vegas, for appellant.

J. C. Compton, of Portales, for appellee.

SADLER, Justice.

The plaintiff, appellant in this court, as a taxpayer and property owner suing for himself and on behalf of all others similarly situated, seeks to enjoin defendant, the county treasurer of Quay county, from proceeding under Laws 1933, c. 171, to give notices, advertise for sale and sell real estate in said county upon which taxes are delinquent for the years 1931 and 1932.

The act whose enforcement is thus sought to be enjoined was enacted as Senate Bill 144, approved March 16, 1933, and by reason of the emergency clause attached, if the effect of the emergency be not open to the inquiry of the courts, effective on that date. It is a new delinquent tax law embracing a comprehensive scheme for the sale of real property for delinquencies in the payment of taxes for 1931 and subsequent years.

The grounds relied upon by plaintiff in his complaint and here urged are as follows: (1) That the legislative declaration in said act declaring an emergency and putting the same into immediate effect upon its passage and approval was without warrant in fact, and is ineffective; (2) that the act violates the "due process" clause of the New Mexico and Federal Constitutions; (3) that the expenditures called for in giving the notices and making the publications required by the act are in violation of 1929 Comp. § 33-4241, the "Bate-

man Act," and 1929 Comp. §§ 33-5901 to 33-5908, the so-called "Budget Law."

The defendant, appearing by the district attorney of the Ninth judicial district, interposed a demurrer to the complaint. The demurrer questioned generally the sufficiency of the complaint and specifically challenged the power of the court to inquire into the question whether an emergency in fact existed warranting the legislative declaration putting the law into immediate effect. The trial court sustained the demurrer, and, the plaintiff electing to stand upon his complaint and refusing to plead further, judgment of dismissal was entered, from which judgment this appeal is prosecuted.

The trial court rendered a written opinion in ruling upon the demurrer, specifically stating that he was only ruling upon the issues raised by the complaint and the demurrer thereto. He thereupon gave it as his opinion that the act was not unconstitutional as depriving landowners of their property without the due process of law. Without passing upon the question whether the legislation assailed violated the so-called Bateman Act or the so-called Budget Act, the trial court merely adverted to the fact that these acts were mere creatures of the Legislature, and, if contravened by a subsequent act of the Legislature, would be repealed by implication to the extent of any irreconcilable conflict. Upon the question of the effect of the emergency clause attached to the act, the trial court held the determination by the Legislature that an emergency existed was final and not open to collateral attack or review by the courts.

We shall consider the points raised in the order of their statement hereinabove. The pertinency to the first point lies in these facts: That the new delinquent tax law directs the sale on the second Monday in June of each year of real property of the respective counties upon which taxes are delinquent for the preceding year or years. The operation of the act for the first sale to be held thereunder is confined to delinquencies beginning with the year 1931. Accordingly, the complaint alleges that the county treasurer is about to begin giving the notices for a sale of real property which under the terms of the act would be held on June 12, 1933. If the act did not become effective upon its passage and approval by virtue of the inclusion of the so-called emergency clause, then the sale about to be held or advertised would be wanting in validity by reason of the fact that there was no law in force, so authorizing, at the time of the doing of the several acts, such as giving notice and the like, required under the terms of the act.

This brings us to a consideration of the effect of the emergency clause. It is to be construed in the light of applicable constitutional provisions. Section 44 of the act provides: "That it is necessary for the preservation of the public peace and safety of the inhabitants of the State of New Mexico that the provisions of this Act shall become effective at the earliest possible time, and therefore an emergency is hereby declared to exist

328

and this Act shall take effect and be in full force from and after its passage and approval."

Section 23 of article 4 of our state Constitution provides: "Laws shall go into effect ninety days after the adjournment of the legislature enacting them, except general appropriation laws, which shall go into effect immediately upon their passage and approval. Any act necessary for the preservation of the public peace, health or safety, shall take effect immediately upon its passage and approval, provided it be passed by two-thirds vote of each house and such necessity be stated in a separate section."

The question of whose determination, that of the Legislature or of the court, shall give conclusiveness and finality to the existence of a declared emergency made the occasion of putting a law into immediate effect, has been many times presented. Two diametrically opposed theories on the subject are reflected in the decisions. According to one line of decisions, the legislative determination is neither final nor conclusive; the matter being held to present a judicial question which gives the courts the final determination. Another line of authorities holds the question to be one strictly and solely for legislative determination, and that, when the Legislature has found the existence of facts warranting its use of the emergency provision for accelerating the effective date of legislation, and has so declared, its action is conclusive and binding upon the courts as well as every one else.

It would be wholly futile to attempt to reconcile these conflicting opinions, and equally unavailing to set out upon a comprehensive review of all of them. Many involve the exemption of a questioned act from the referendum by reason of the declaration in an emergency clause that it is necessary for the public peace, health, or safety, acts relating to which are ordinarily deemed emergent and capable of being given immediate effect, as well as furnishing a class of laws almost uniformly excepted from operation of the referendum provisions. Many of the cases which we shall cite and discuss are upon the question whether it is for the Legislature or the courts to determine when a law is of the class excluded from annullment by referendum. Decisions that the legislative declaration is controlling in that class of cases are obviously strongly in point here.

Illuminating text discussions and case notes dealing with the question are to be found in 59 C. J. 1143 et seq.; 25 R. C. L. § 50, under the topic "Statutes"; 50 L. R. A. (N. S.) 195, 212; L. R. A. 1917B, 15, 26; 7 A. L. R. 519.

Some of the leading cases denying conclusiveness to the legislative determination that an emergency exists or that the questioned act falls within the class of cases excepted from the referendum are the following, to wit: State ex rel. Brislawn v. Meath, 84 Wash. 302, 147 P. 11; McClure v. Nye, 22 Cal. App. 248, 133 P. 1145; Atty. Gen. ex rel. Barbour v. Lindsay, 178 Mich. 524, 145 N. W.

98; Merrill v. City of Lowell, 236 Mass. 463, 128 N. E. 862; McIntyre v. Commonwealth, 221 Ky. 16, 297 S. W. 931; State ex rel. Westhues v. Sullivan, 283 Mo. 546, 224 S. W. 327; State ex rel. Pollock v. Becker, 289 Mo. 660, 233 S. W. 641; State v. Stewart, 57 Mont. 144, 187 P. 641.

Among the cases frequently cited and relied upon as holding to the opposite view will be found Kadderly v. City of Portland, 44 Or. 118, 74 P. 710, 711, 75 P. 222; Roy v. Beveridge, 125 Or. 92, 266 P. 230; Van Kleeck v. Ramer, 62 Colo. 4, 156 P. 1108, 1110; In re Interrogatories of the Governor, 66 Colo. 319, 181 P. 197, 7 A. L. R. 526; State v. Smith, 102 Ohio St. 591, 133 N. E. 457; Arkansas Tax Commission v. Moore, 103 Ark. 48, 145 S. W. 199; Hanson v. Hodges, 109 Ark. 479, 160 S. W. 392; followed in Stanley v. Gates, 179 Ark. 886, 898, 19 S.W.(2d) 1000, 1005; Orme v. Salt River Valley Water Users' Ass'n, 25 Ariz. 324, 217 P. 935; Oklahoma City v. Shields, 22 Okl. 265, 100 P. 559, 575; Day Land & Cattle Co. v. State, 68 Tex. 526, 543, 4 S. W. 865; Culp v. Commissioners of Chestertown, 154 Md. 620, 141 A. 410; Diaz Cintron v. People of Porto Rico (U. S. C. C. A. 1st Ct.) 24 F.(2d) 957, 959. See, also, Wheeler v. Chubbuck, 16 Ill. 361; State v. Crawford, 36 N. D. 385, 162 N. W. 710, Ann. Cas. 1917E, 955; State v. Jackson, 119 Miss. 727, 81 So. 1.

A careful reading and analysis of the two conflicting lines of authority and the reasoning advanced in support of the respective views announced, particularly as applicable to our own constitutional provisions, convince us of the soundness of the rule which holds final and conclusive a legislative determination of an emergency. Perhaps the leading case supporting this rule and the one most frequently cited is the Oregon case of Kadderly v. City of Portland, supra. The court was dealing with the finality of the legislative determination that a questioned statute was "necessary for the immediate preservation of the public peace, health, or safety." If final, the act was in force and effect from and after its approval and excepted from a referendum thereon; otherwise not. The Supreme Court of Oregon in a well-reasoned and elaborate opinion held the legislative determination final and conclusive. Among other things the court said:

"But the vital question is, what tribunal is to determine whether a law does or does not fall under this classification? Are the judgment and findings of the legislative assembly conclusive, or are they subject to review by the courts? The inquiry is much simplified by bearing in mind that the exception in the constitutional amendment is not confined to such laws as the legislative assembly may legally enact by virtue of the police powers of the state, or to those alone that may affect the public peace, health, or safety. The police power is limited to the imposition of restraints and burdens on persons and property, in order to secure the general comfort, health, and prosperity of the state. Tiedeman, Lim. Pol. Power, § 1. But the language of the constitutional amendment is broader, and includes all laws, of whatsoever kind, necessary for the immediate preservation of

the public peace, health, or safety, whether they impose restraints on persons and property, or come strictly within the police powers, or not. The laws excepted from the operation of the amendment do not depend alone upon their character, but upon the necessity for their enactment in order to accomplish certain purposes. As to such laws, the amendment of 1902 does not in any way abridge or restrict the power of the Legislature, which, by the insertion of a proper emergency clause, may unquestionably cause them to go into effect upon approval by the Governor. As the Legislature may exercise this power when a measure is in fact necessary for the purposes stated, and as the amendment does not declare what shall be deemed laws of the character indicated, who is to decide whether a specific act may or may not be necessary for the purpose? Most unquestionably, those who make the laws are required, in the process of their enactment, to pass upon all questions of expediency and necessity connected therewith, and must therefore determine whether a given law is necessary for the preservation of the public peace, health, and safety. It has always been the rule, and is now everywhere understood, that the judgment of the legislative and executive departments as to the wisdom, expediency, or necessity of any given law is conclusive on the courts, and cannot be reviewed or called in question by them. It is the duty of the courts, after a law has been enacted, to determine in a proper proceeding whether it conflicts with the fundamental law, and to construe and interpret it so as to ascertain the rights of the parties litigant. The powers of the courts do not extend to the mere question of expediency or necessity, but, as said by Mr. Justice Brewer, 'they are wrought out and fought out in the Legislature and before the people. Here the single question is one of power. We make no laws. We change no constitutions. We inaugurate no policy. When the Legislature enacts a law, the only question which we can decide is whether the limitations of the Constitution have been infringed upon.' Prohibitory Am. Cas., 24 Kan. 700, 706. The amendment excepts such laws as may be necessary for a certain purpose. *The existence of such necessity is therefore a question of fact, and the authority to determine such fact must rest somewhere. The Constitution does not confer it upon any tribunal. It must therefore necessarily reside with that department of the government which is called upon to exercise the power.* It is a question of which the Legislature alone must be the judge, and, when it decides the fact to exist, its action is final. * *. * [Italics ours.]

"But, it is argued, what remedy will the people have if the Legislature, either intentionally or through mistake, declares falsely or erroneously that a given law is necessary for the purposes stated? The obvious answer is that the power has been vested in that body, and its decision can no more be questioned or reviewed than the decision of the highest court in a case over which it has jurisdiction. Nor should it be supposed that the Legislature will disregard its duty, or

fail to observe the mandates of the Constitution. The courts have no more right to distrust the Legislature than it has to distrust the courts. The Constitution has wisely divided the government into three separate and distinct departments, and has provided that no person charged with official duties under one of these departments shall exercise any of the functions of another, except as in the Constitution expressly provided. Const. art. 3, § 1. It is true that power of any kind may be abused when in unworthy hands. That, however, would not be a sufficient reason for one co-ordinate branch of the government to assign for attempting to limit the power and authority of another department. If either of the departments, in the exercise of the powers vested in it, should exercise them erroneously or wrongfully, the remedy is with the people, and must be found, as said by Mr. Justice Strahan in Biggs v. McBride, supra [17 Or. 640, 21 P. 878, 5 L. R. A. 115], in the ballot box."

In Van Kleeck v. Ramer, supra, the Supreme Court of Colorado was considering the effect of a legislative determination that the law in question was necessary for the immediate preservation of the public peace, health, and safety, as including it in the class of laws excepted from the referendum. Chief Justice Gabbert in the opinion stated:

"During the process of the enactment of a law the Legislature is required to pass upon all questions of necessity and expediency connected therewith. The existence of such necessity is a question of fact, which the General Assembly in the exercise of its legislative functions must determine; and under the constitutional provision above quoted, that fact cannot be reviewed, called in question, nor be determined by the courts. It is a question of which the Legislature alone is the judge, and when it determines the fact to exist, its action is final. The courts cannot be advised what facts the General Assembly acted upon when it determined that a statute was necessary for the purposes specified, and to undertake to review its action upon a question of fact would be a collateral attack upon its judgment. The General Assembly has full power to pass laws for the purposes with respect to which the referendum cannot be ordered, and when it decides by declaring in the body of an act that it is necessary for the immediate preservation of the public peace, health, or safety, it exercises a constitutional power exclusively vested in it, and hence such declaration is conclusive upon the courts in so far as it abridges the right to invoke the referendum. Kadderly v. Portland, 44 Or. 118, 74 P. 710, 75 P. 222; Oklahoma City v. Shields, 22 Okl. 265, 100 P. 559; State v. Moore, 76 Ark. 197, 88 S. W. 881, 70 L. R. A. 671; State ex rel. Lavin v. Bacon, 14 S. D. 394, 85 N. W. 605. To conclude the contrary would violate the constitutional provision to which we have referred, the plain object of which is to inhibit one department of government exercising any power that by the Constitution is vested in another. The Constitution defines the powers and duties of each department, and should the courts venture to substitute

their judgment for that of the Legislature in any case where the Constitution has vested the Legislature with power over the subject, they would enter upon a field where it is impossible to set limits to their authority, and where their discretion alone would measure the extent of their interference. Cooley's Constitutional Limitations (7th Ed.) 236.

"The argument of counsel for petitioner that the courts are vested with authority to determine whether an act is of the character which excepts it from the referendum, notwithstanding the declaration by the General Assembly that it is, is based upon the assumption that unless the courts exercise the power to determine that question, the people can be deprived of the right to refer a law, if the Legislature, either intentionally or through mistake, declares falsely or erroneously that a law is necessary for the immediate preservation of the public peace, health, or safety. The answer to this proposition is that under the Constitution the General Assembly is vested with exclusive power to determine that question, and its decision can no more be questioned or reviewed than the decision of this court in a case over which it has jurisdiction. It will not be presumed that the General Assembly will disregard its duty or fail to observe the mandates of the Constitution, or not act honestly. Neither can it be assumed that the courts are better able to determine whether a law is immediately necessary for the preservation of the public peace, health, or safety than the Legislature. Power may be abused, but that is not a valid reason for one co-ordinate branch

of the government to assign for limiting the power and authority of another department. The judicial department is as much bound by constitutional provisions as any other. 'It cannot run a race of opinions upon points of right reason and expediency with the law-making power.' The courts do not make Constitutions or change them. They can only construe the provisions of that instrument. So that the only power we can exercise in solving the question presented is to ascertain where the authority to determine, when a law is exempt from the referendum, is lodged. The cases cited by counsel for petitioner from Washington and California, holding that the question of whether a law is necessary for the purposes specified is subject to review by the courts, appear to be grounded upon the assumption that the constitutional provisions, with respect to the initiative and referendum, should be construed so as to make effective the power of the referendum. State v. Meath, 84 Wash. 302, 147 P. 11; McClure v. Nye, 22 Cal. App. 248, 133 P. 1145. In the Washington case, and also in a Michigan case, cited by counsel (Attorney General v. Lindsay, 178 Mich. 524, 145 N. W. 98), it is held that the authority of the Legislature to make the declaration that an act is necessary for the immediate preservation of the public peace, health, or safety is confined to such laws as the Legislature may legally enact under the police power of the state. Neither of these reasons furnish the test by which to ascertain whether the courts have authority to determine if a law is of the character which exempts it from the refer-

-endum, or inquire whether the declaration of the Legislature that it is, is false or erroneous.

"The only test is, what department of government is authorized, under the Constitution, to determine whether an act is necessary for the purposes specified. This authority, as we have pointed out, is vested in the General Assembly, and if that body erroneously or wrongfully exercises that authority, the remedy is with the people."

The Supreme Court of Oklahoma in Oklahoma City v. Shields, supra, speaking through Chief Justice Williams, said: "Most unquestionably, those who make the laws are required, in the process of their enactment, to pass upon all questions of expediency and necessity connected therewith, and must therefore determine whether a given law is necessary for the preservation of the public peace, health, and safety. It has always been the rule, and is now everywhere understood, that the judgment of the legislative and executive departments as to wisdom, expediency, or necessity of any given law is conclusive on the courts, and cannot be reviewed or called in question by them. * * * The existence of such necessity is therefore a question of fact, and the authority to determine such fact must rest somewhere. The Constitution does not confer it upon any tribunal. It must, therefore, necessarily reside with that department of the government which is called upon to exercise the power. It is a question of which the Legislature alone must be the judge, and, when it decides the fact to exist, its action is final.

In the late case of Stanley v. Gates, supra, the Supreme Court of Arkansas, adhering to its former decisions touching upon the finality of a legislative determination, said: "Likewise its action is supreme in declaring when an emergency exists; and if it states a fact or facts constituting the emergency so that its action cannot be said to be arbitrary, the courts cannot say to it that it has or has not performed its constitutional duty. The three departments of government are of equal dignity and no one of them can encroach upon the other. The emergency clause in the act as signed by the Governor differs in no essential respect from the one alleged to have been in the act when passed by the Legislature. Whether the facts are stated in a concise or more extended form is a matter that concerns the Legislature alone. The courts might disagree with the Legislature about the necessity of action and be of the opinion that the facts declared did not constitute a sufficient reason for immediate action; but we are of the opinion that a declaration by the Legislature of an emergency based upon certain facts stated is conclusive upon the courts, and upon all parties in so far as it abridges the right involved in the referendum. Hanson v. Hodges, 109 Ark. 479, 160 S. W. 392; W. E. Jumper v. I. N. McCollum (Ark. June 24, 1929) [179 Ark. 837], 18 S.W.(2d) 359; and In re Senate Resolution No. 4, 54 Colo. 262, 130 P. 333."

Also in Diaz Cintron v. Porto Rico, supra, the United States Circuit Court of Appeals of the First Circuit, speaking through Circuit Judge Johnson, said: "The act of the Legislature of Porto Rico dealing with the district

court of Ponce states that the act is of urgent nature and is imperatively necessary for the rapid and efficient administration of justice. The fact of the emergency which existed was for the sole determination of the Legislature in the manner provided by the Organic Act, and is not reviewable by the courts."

Twenty-five years after the doctrine of Kadderly v. City of Portland was first announced, we find the Supreme Court of Oregon reaffirming it in Roy v. Beveridge, 125 Or. 92, 266 P. 230, 232, in the following language, to wit: "In other words, in order for a legislative act, whether passed by the Legislature or a city council, to be effective as an emergency measure, it must appear that, in the judgment of the Legislature, the immediate efficacy of the act or ordinance is necessary for the immediate preservation of the peace, health, or safety of the community, and in Kadderly v. Portland, 44 Or. 118, 74 P. 710, 75 P. 222, this court in an exhaustive and masterly opinion by Justice Robert S. Bean held that power of determining existence of such an emergency was exclusively with the Legislature, and that the courts had no authority to question that determination. That opinion is supported by the great weight of authority and has been consistently followed by this court since that date."

On the contrary, the Supreme Court of Washington, as shown by the majority and minority opinions in State ex rel. Short v. Hinkle, 116 Wash. 1, 198 P. 535, 537, and the still later opinion in State ex rel. Reiter v. Hinkle, 161 Wash. 652, 297 P. 1071, has sought to explain and minimize the effect of its earlier decision in the case of State ex rel. Brislawn v. Meath, supra, as note from the language of the majority opinion in State ex rel. Short v. Hinkle, where it is said: "The Legislature possessed the opportunity (and is conclusively presumed to have availed itself of that opportunity) to know the facts and has declared that a precarious financial condition prevails. We are asked to say that the solemn statement of the Legislature is false, and to say so, not because we are possessed of any knowledge upon the subject, but because we are ignorant upon it. We can take no testimony; we have no machinery with which to gather the facts, which the Legislature is presumed to be possessed of, but, totally in the dark, we are asked to substitute our personal prejudices, predilections, and preconceptions for the presumably enlightened judgment of those deputed by the Constitution of the state to inquire into and determine these factual problems. It is only when the court, following the Brislawn Case, can say, from its judicial knowledge, that a patent contradiction exists upon the face of a legislative enactment, that, in law or in reason, it can deny the legislative declaration of emergency."

Likewise, and as pointed out by the author of the case note in 7 A. L. R. 519, 520, doubt is thrown upon the rule in California as announced in Re Hoffman, 155 Cal. 114, 99 P. 517, 132 Am. St. Rep. 75, and McClure v. Nye, supra, by the later decision in Ex parte McDermott, 180 Cal. 783, 183 P. 437, where the court, dealing with the effect of a de-

clared and properly phrased emergency clause to an act defining criminal syndicalism, said: "The courts may not say that this conclusion of the Legislature was not justified."

Nor is it the case as suggested in the opinion of the majority in the Montana case of State v. Stewart, supra, that the Oklahoma courts have in any manner receded from the position announced in Oklahoma City v. Shields as disclosed by the later case of Riley v. Carico, 27 Okl. 33, 110 P. 738. The Shields Case is cited in the Riley Case. It would be passing strange under such circumstances that the court should overrule by implication rather than expressly a case so patently in mind as to be cited in the overruling opinion. And we find such is not the case. Section 58 of article 5 of the Oklahoma Constitution empowering the Legislature by a two-thirds vote to place laws in immediate effect when immediately necessary for the preservation of the public peace, health, or safety declared that an emergency measure should not include among other things any act making provision for "the renting or encumbrance of real property for a longer term than one year." The drainage bonds authorized by the act before the court would have constituted, when issued, a lien on real estate for ten years, and the act authorizing them was of a class expressly excepted from the Legislature's power to make emergent.

Practically all of the cases denying finality to the legislative determination that an emergency exists are hypothesized on the proposition that the power may be abused. But, as pointed out in many of the decisions contra, it is no test of the existence of a power to assert that it may be abused. See Proposed Middle Rio Grande Conservancy Dist., 31 N. M. 188, 242 P. 683. And it would ill become one co-ordinate department of the government to deny to another the free exercise of a power residing with it upon the assumption that the power might be abused. The Constitution wisely places some restraint upon the legislative exercise of the power by requiring a concurrence of a two-thirds majority in each house as a condition precedent to declaring an emergency.

The determination of whether an emergency exists is purely a question of fact. It is almost axiomatic that, when power to enact depends upon the existence of certain facts, it will be presumed that the Legislature found the existence of those facts before assuming to act. See Stevenson v. Colgan, 91 Cal. 649, 27 P. 1089, 1090, 14 L. R. A. 459, 25 Am. St. Rep. 230. As said by the court in the case just cited: "When the right to enact a law depends upon the existence of facts, it is the duty of the legislature before passing the bill, and of the governor before approving it, to become satisfied, in some appropriate way, that the facts exist; and no authority is conferred upon the courts to hear evidence and determine, as a question of fact, whether these co-ordinate departments of the state government have properly discharged such duty. The authority and duty to ascertain the facts which ought to control legislative action are, from the necessity of the case, devolved by the constitution upon those to whom it has given

the power to legislate, and their decision that the facts exist is conclusive upon the courts, in the absence of an explicit provision in the constitution giving the judiciary the right to review such action."

Article 3, § 1, N. M. Const., distributes the powers of government into three departments, the legislative, executive, and judicial, and enjoins upon us that: "No person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise *any powers* [italics ours] properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted."

All will agree, even those asserting the power of the courts in the premises, that the exercise of the power in question is a legislative function in the first instance. They merely claim a right of review in the courts. When they make this concession, as they must, they destroy the premise upon which their entire argument is builded. For they must further admit that the Constitution does not expressly give into the hands of the courts the power to exercise this purely legislative function, a fact adverted to in many of the decisions. Lacking express power or direction to perform a legislative function, we are precluded by express constitutional mandate from doing so upon any assumption or implication of right so to do.

This view is in accord with previous decisions of this court. In Kelley v. Marron, 21 N. M. 239, 153 P. 262, 263, it was early decided that the courts would not look beyond a properly authenticated legislative act, certified and signed as required by the Constitution, to the journal of either house for the purpose of determining whether such act was read in full therein, after it had been enrolled and engrossed, as required by section 20, art. 4, of the Constitution. The court, speaking through Mr. Chief Justice Roberts, said:

"Section 1, art. 3, of the Constitution expressly prohibits the exercise by one of the departments of government of powers belonging to another department, 'except as in this Constitution expressly directed or permitted,' and no express grant of power is given to the judiciary to supervise the acts and conduct of the Legislature in the passage of a legislative act.

"In our Constitution the judicial department is given certain broad powers, and the jurisdiction of the various courts is defined. In certain contingencies the Supreme Court is authorized to call in a district judge to sit in place of one of the regular judges of the court. No one would contend that either of the other departments of government would have the right to question a judgment of the court, upon the ground that it did not have the right to call in a district judge who might have participated in the opinion. Could the Legislature by an act disapprove of a judgment of the Supreme Court, on the ground that some procedure prescribed by the Constitution had not been complied with? The Governor is given the right to act in a certain way upon his finding that certain facts exist. Could either of the other departments

legally call in question his act, upon the ground that he had erroneously determined the facts upon which his action was predicated? The very statement of the assumption of the right of either of the other departments to question the acts and judgments of the judiciary is so shocking to the mind that it demonstrates the fallacy of the proposition that the judicial department has the power to go behind the duly and properly authenticated act of the Legislature to see whether there has been compliance with constitutional directions as to its method of procedure. If that proposition were correct, then the three branches of our government are not equal and co-ordinate, as generally supposed; but the judicial branch of the government is paramount to each of the others, and is invested with the power and charged with the duty of exercising a supervisory control over both the other departments of government, and of seeing to it that such departments act and perform their functions, not according to their interpretations of the constitutional mode of doing the act undertaken, but as the judicial branch of the government may interpret the fundamental law as to the method of procedure."

See, also, Asplund v. Hannett, 31 N. M. 641, 249 P. 1074, 58 A. L. R. 573; State v. Sanchez, 32 N. M. 265, 255 P. 1077, 1087, and State v. Fifth Judicial District Court, 36 N. M. 151, 9 P.(2d) 691.

In the Sanchez Case, supra, one involving the power of the Governor to remove officers appointed by him, we held:

"The only inquiry left open to the court in this sort of proceeding is whether the cause assigned for removal is one for which the Constitution authorizes a removal to be made. If it is, the Governor acted within his jurisdiction in making it, no matter how grievously he might err in judgment.

"The order of removal in this case assigns a constitutional cause for removal, and is therefore conclusive on the courts."

It follows from what has been said that the trial court was correct in refusing to go behind the legislative declaration of an emergency contained in the act in question. That determination was final and conclusive and binding upon the courts.

It does not necessarily follow, and we are far from intending to suggest, that the same conclusiveness we accord to the legislative declaration in this case, involving only the immediate or postponed effect of the statute, is to be given such a declaration as precluding an attack by referendum, when the latter question shall be properly before us.

It is next contended that the act in question violates the due process clause of the state and Federal Constitutions (Const. N. M. art. 2, § 18; Const. U. S. Amend. 14). Upon what theory this phase of the case was submitted to the trial court does not appear. The plaintiff merely alleged that, if the threatened tax sale occurred, the defendant would in due course issue tax sale certificate and tax deed, thereby divesting him of his property without due process of law. In what respect due process is lacking is no-

where pointed out or even suggested. The complaint simply avers that the act does not constitute due process. No issue was tendered by such an allegation, and the trial court's action was proper for that reason if for no other.

 Certain reasons are now urged in this court as to why due process is lacking in the enactment in question, as that the notice of sale provided for is not required to contain a description of the property to be sold. But, without knowing whether the trial court ever heard, considered, or ruled upon any such questions, they are not before us. Nevertheless, it may be said that in an able opinion by the late Mr. Justice Parker, Maxwell v. Page, 23 N. M. 356, 168 P. 492, 5 A. L. R. 155, this court long ago held that the constitutional guaranty against the taking of property without due process of law relates itself, in taxation proceedings, to the essentials of taxation only.

The remaining questions involve the contention by plaintiff that Laws 1933, c. 171, the act assailed, is in conflict with other prior statutory enactments such as the "Bateman Act," 1929 Comp. § 33-4241; the so-called "Budget Law," 1929 Comp. §§ 33-5901 to 33-5908, and Laws 1933, c. 109, known as S. B. 241, remitting penalties and interest upon delinquent taxes, if paid within a stated period. Without pausing to consider whether the conflict claimed exists in fact, if it does, as so pertinently remarked by the trial judge, the later act simply repeals the earlier to the extent of any irreconcilable conflict.

The judgment of the lower court was proper, and should be affirmed. It is so ordered.

WATSON, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.